JAMES E. STEELE, ET AL.

v.

FLUVANNA COUNTY BOARD OF ZONING APPEALS, ET AL.

Record No. 930196

November 5, 1993

Present: All the Justices

*Charles R. Jaeger* for appellants.

*Frederick W. Payne, County Attorney* for appellee Board of Zoning Appeals of Fluvanna County.

*George H. Dygert* for appellees Tony L. Garrett and Kathleen K. Garrett.

JUSTICE KEENAN delivered the opinion of the Court.

In this appeal, we consider whether the trial court erred in upholding a decision of the Board of Zoning Appeals of Fluvanna County (BZA) that authorized a variance from a residential side yard setback requirement.

In July 1990, Tony L. and Kathleen K. Garrett submitted their application for a variance to the BZA. In 1988, the Garretts had purchased a lot in the Lake Monticello subdivision of Fluvanna County, adjacent to a vacant lot owned by James E. and Dorothy A. Steele. Thereafter, the Garretts entered into a contract with Raintree, Inc. to build a house on their lot.

The Lake Monticello Owners' Association (Association) told Raintree that it could assume that the front corners of the lot were located where the telephone pedestal and the water meter had been

placed. Accepting this representation without obtaining a survey of the property, Raintree built the house relying on these markers, which had been located incorrectly.

After the house was built, in order to obtain permanent financing for the property, the Garretts commissioned a survey, which revealed that the house was located in violation of the County's 10-foot side yard setback requirement. The survey showed that the north corner overhang of the Garretts's house was approximately eight inches from the Garrett-Steele property line. Nevertheless, the Garretts proceeded to settlement on the loan. Approximately two years later, they filed their application for a variance.

After conducting a hearing on the Garretts's application for a variance to reduce the side yard setback from the required 10 feet to zero feet, the BZA voted on April 2, 1991, to approve the variance, finding that a "hardship" existed because, without a variance, the Garretts would have to move at least part of the house in order to comply with the side yard setback requirement.

The Steeles filed a petition for a writ of certiorari in the trial court, seeking a review of the BZA's decision. After issuing the writ and conducting a hearing, the trial court remanded the case to the BZA, requesting that it clarify its finding as to "whether the variance at issue in this cause will result in substantial damage to adjoining property owners." The trial court also remanded the matter for "such other specific findings of fact as the [BZA] may choose to make."*

On remand, without taking any further evidence, the BZA adopted a resolution on April 16, 1992, concluding that the Garretts had demonstrated:

    (a)   That the strict application of the ordinance would produce undue hardship;

    (b)   That such hardship is not shared generally by other properties in the same zoning district and the same vicinity;

    (c)   That the authorization of the variance sought by the applicant will not be of substantial detriment to adjacent property and that the character of the district will not be changed by the granting of the variance; and

---

* Based on our holding in this case, we express no opinion as to whether the trial court had authority to issue this order of remand.

(d)   That the condition or situation of the property concerned is not of so general or recurring a nature as to make reasonably practicable the formulation of a general regulation to be adopted as an amendment to the ordinance[.]

The trial court then upheld the BZA's decision, finding, among other things, that it was supported by the evidence and was not plainly wrong or based on the application of erroneous principles of law. This appeal followed.

■ The Steeles argue that the trial court erred in finding the evidence presented was sufficient to demonstrate the existence of an unnecessary hardship, as required by Code § 15.1-495(2). That section, which sets forth the powers and duties of boards of zoning appeals to grant variances, enables such boards to authorize a variance upon concluding that it "will not be contrary to the public interest, when, owing to special conditions a literal enforcement of the [applicable zoning] provisions will result in unnecessary hardship."

Code § 15.1-495(2) further details the circumstances under which a variance may be granted:

When a property owner can show that his property was acquired in good faith and where by reason of the exceptional narrowness, shallowness, size or shape of a specific piece of property at the time of the effective date of the ordinance, or where by reason of exceptional topographic conditions or other extraordinary situation or condition of such piece of property, or of the condition, situation, or development of property immediately adjacent thereto, the strict application of the terms of the ordinance would effectively prohibit or unreasonably restrict the utilization of the property or where the board is satisfied, upon the evidence heard by it, that the granting of such variance will alleviate a clearly demonstrable hardship approaching confiscation, as distinguished from a special privilege or convenience sought by the applicant, provided that all variances shall be in harmony with the intended spirit and purpose of the ordinance.

■ In addition, Code § 15.1-495(2) limits the authority of boards of zoning appeals to grant variances by requiring that specific findings be made prior to the granting of any variance. Pursuant to that section, a board of zoning appeals can grant a variance only upon finding:

    (a)   That the strict application of the ordinance would produce undue hardship.

    (b)   That such hardship is not shared generally by other properties in the same zoning district and the same vicinity.

    (c)   That the authorization of such variance will not be of substantial detriment to adjacent property and that the character of the district will not be changed by the granting of the variance.

Therefore, in accordance with these statutory requirements, ''not only must an applicant show the existence of at least one of several 'special conditions' which would cause compliance with a zoning ordinance to result in an 'unnecessary hardship,' but the board of zoning appeals must find that the three enumerated tests are satisfied.'' *Packer v. Hornsby*, 221 Va. 117, 121, 267 S.E.2d 140, 142 (1980); *see also Riles v. Board of Zoning Appeals*, 246 Va. 48, 51-52, 431 S.E.2d 282, 284 (1993).

■ On review in the trial court, the decision of a board of zoning appeals is presumed to be correct. *Masterson v. Board of Zoning Appeals*, 233 Va. 37, 44, 353 S.E.2d 727, 732-33 (1987). The trial court's review is limited to determining whether the board has applied erroneous principles of law or, where the board's discretion is involved, whether the decision is plainly wrong and in violation of the purpose and intent of the zoning ordinance. *Id.*; *Packer*, 221 Va. at 120, 267 S.E.2d at 141.

In the present case, the Steeles argue that there was no evidence before the BZA that the size, shape, or topography of the Garretts's lot, or any special conditions relating to immediately adjacent property, would, as required by Code § 15.1-495(2), effectively prohibit or unreasonably restrict their use of the property or create a hardship approaching confiscation. In response, the Garretts contend that the evidence was sufficient to meet the statutory requirements for a variance because the width of the lot was only 100 feet and the

utility markers were misplaced on the property through no fault of their own. They conclude that these facts demonstrate the existence of an unnecessary hardship, since the north end of the house would have to be removed in order to comply with the ordinance. We disagree with the Garretts and the BZA.

As the BZA concedes, the evidence shows that it would have been possible to build the improvements without violating the ordinance if the measurements had been made from the actual lot lines, rather than from the utility markers. Therefore, in support of their argument that an unnecessary hardship was proved, the Garretts and the BZA are left only with the evidence that the utility markers were misplaced, and that the Association misinformed Raintree concerning the Garretts's right to rely on the accuracy of the location of those markers.

■ We hold that these facts are insufficient to demonstrate the existence of an unnecessary hardship. First, the location of markers on a piece of property is not a "situation or condition of such piece of property," within the meaning of Code § 15.1-495(2). These terms, as employed in the statute, refer to the natural physical characteristics of the property itself, not to monuments placed on the property. *See Place v. Board of Adjustment*, 200 A.2d 601, 602-05 (N.J. 1964).

■ Second, the evidence demonstrates that the hardship, if any, was self-inflicted. The placement of the improvements on the property was within the control of the Garretts and their contractor, Raintree. As this Court stated in *Alleghany Enterprises, Inc. v. Board of Zoning Appeals*, 217 Va. 64, 69, 225 S.E.2d 383, 386 (1976), a self-inflicted hardship, whether deliberately or ignorantly incurred, provides no basis for the granting of a variance. *See also Board of Zoning Appeals v. Combs*, 200 Va. 471, 477-78, 106 S.E.2d 755, 759 (1959).

■ In addition, the extraordinary conditions listed in Code § 15.1-495(2), which, in effect, define "unnecessary hardship," demonstrate the General Assembly's intent that variances be granted only where application of zoning restrictions would appear to be constitutionally impermissible. *Packer*, 221 Va. at 122, 267 S.E.2d at 142. Manifestly, a self-inflicted hardship cannot be the cause of a constitutional deprivation of a landowner's rights.

For these reasons, we conclude that the trial court erred in upholding the decision of the BZA. Accordingly, we will reverse the trial court's judgment and enter final judgment in favor of the Steeles.

*Reversed and final judgment.*