906 A.2d 959

MONTGOMERY COUNTY, Maryland

v.

Frances ROTWEIN.

No. 2414, Sept. Term, 2004.

Court of Special Appeals of Maryland.

Sept. 6, 2006.

Karen L. Federman Henry (Marc P. Hansen, Charles W. Thompson, County Atty, on brief), Rockville, for appellant.

Stephen J. Orens (Rebecca D. Williams, Casey L. Moore, on brief), Bethesda, for appellee.

Panel HOLLANDER, KRAUSER, MOYLAN (retired, specially assigned), JJ.

KRAUSER, J.

Seeking to build an enclosed, two-car garage and a walkway on her residential property, appellee Frances Rotwein applied for variances from front and side yard setbacks mandated by the Montgomery County Zoning Ordinance. When the Board of Appeals for Montgomery County ("the Board of Appeals" or "the Board") denied that application, Rotwein filed a petition for judicial review in the Circuit Court for Montgomery County. The circuit court reversed the Board's decision and remanded the case to the Board with instructions that it reopen the record to receive additional evidence regarding alternative locations for the garage and that it reconsider whether the property is unique in light of *North v. St. Mary's County*, 99 Md.App. 502, 638 A.2d 1175 (1994).

Appealing that decision, Montgomery County presents one question for our review:

> Did the [B]oard of [A]ppeals properly construe the zoning ordinance to require it in reviewing an application for a variance to make findings based on the unique characteristics of the property without considering the location of existing structures on the site?

For the reasons that follow, we reverse the decision of the circuit court and remand the case to that court for it to affirm the decision of the Board of Appeals.

## APPLICABLE ZONING LAW

The Montgomery County Zoning Ordinance authorizes the Board of Appeals to hear and decide petitions for variances. *See* Montgomery County Zoning Ordinance § 59–A–4.11. But it authorizes only area variances, as it expressly prohibits the Board of Appeals from granting a variance "to authorize a use of land not otherwise permitted." § 59–G–3.1(d).

To obtain an area variance, an applicant must prove by a preponderance of the evidence that

(a) By reason of exceptional narrowness, shallowness, shape, topographical conditions, or other extraordinary situations or conditions peculiar to a specific parcel of property, the strict application of these regulations would result in peculiar or unusual practical difficulties to, or exceptional or undue hardship upon, the owner of such property;

(b) Such variance is the minimum reasonably necessary to overcome the aforesaid exceptional conditions;

(c) Such variance can be granted without substantial impairment to the intent, purpose and integrity of the general plan or any duly adopted and approved area master plan affecting the subject property; and

(d) Such variance will not be detrimental to the use and enjoyment of adjoining or neighboring properties.

§ 59–G–3.1.

## THE PROPERTY

Rotwein purchased the property at 6605 Tulip Hill Terrace with her now-deceased husband, Joseph Rotwein, in 1955. The lot, which is improved with a one-story single-family house, has a total area of 31,091 square feet. The property is 83 feet wide at the front where it abuts the street, 87 feet wide at the rear, 415 feet along one side, and 325 along the other. The house sits eight feet from the right-hand side lot line and twenty-three feet from the front lot line.

Because the property sits at a bend in the road, its front yard is deeper on the eastern side of the property than on the western side. The lot slopes downward from east to west, and also from front to back. The next narrowest lot in the neighborhood is 98 feet wide, and other lots in the neighborhood average 108 feet in width.

Rotwein has lived on the property since her house was built. The house is a one-story frame building, and the lower level of the house is a finished basement. In the front of the house is an exposed carport with a driveway that accesses the road at two locations. In the rear are a deck, a slate patio, a pool, and a tennis court. The pool and the tennis court were added to the rear of the house in the 1970s. And, in 1983, the Rotweins obtained a variance from existing setback requirements to build a second, enclosed patio on the eastern side of their home.

Mrs. Rotwein now wishes to build an enclosed, two-car garage on the eastern corner of the front of her property, where the carport presently is. The garage, as proposed, would be constructed three feet from the eastern edge of the property, and eighteen feet from the street. But the property, as currently zoned,[1] requires a twenty-five-foot setback from the street and an eight-foot setback on each side, with the sum of the setbacks of both sides totaling at least eighteen feet. Montgomery County Code §§ 59–C–1.323(a), (b)(1). Accordingly, Rotwein requests a variance of seven feet from the front setback and a variance of three feet from the sum of the side setbacks, because it would reduce the sum of the side yards to fifteen feet.

## THE BOARD OF APPEALS HEARINGS

The Board of Appeals held a hearing on Rotwein's variance application on January 21, 2004. Rotwein's architect, Dean

---

1. Although Rotwein's property is currently zoned R–90, it was subdivided in 1957, while zoned R–60. The property was developed as an R–60 property and is therefore still held to the setback requirements of the R–60 zone.

Brenneman, testified that Rotwein, who was 84 years old, wanted to build the garage because she felt unsafe entering her house and wished to have the ability to enter and exit her house within an enclosed garage. He explained that Rotwein's lot is much longer and narrower than the other lots in the neighborhood, and that the other neighborhood properties generally have two-car garages. Brenneman opined that, as a result of the narrow shape of the property and the "deep" curvature at its front, the only location the garage can be placed is at the front, eastern corner of the property. If placed there, it would be set apart from the main house, but connected to it by an areaway.

The Board questioned Brenneman as to whether several alternative locations and configurations for the garage, which would not require a variance, would be feasible. Brenneman rejected all of the alternatives suggested by the Board. He stated that one alternative proposed by the Board—enclosing the existing carport—was unacceptable because the front door of the house is accessed from inside the carport, such that "if you enclose that as a garage you no longer have a front door of the house." He also rejected the Board's proposals that a one-car garage be built instead of a two-car garage, or that the garage be placed closer to the main house, so that it would be as large as originally proposed, but within the building envelope. He found the former unacceptable because it would reduce the value of Rotwein's property, given "the neighborhood character of having two-car garages for houses of this size in this area," and the latter unfeasible because it would require that the property be re-graded. The re-grading, he informed the Board, would bury the windows to the lower level of the house, necessitating "window wells" to allow light and air to enter that level. If reconfigured that way, the garage, he stated, would block the front door of the house. Brenneman also rejected the Board's suggestion that the garage be built behind the house, which could be entered from a road that runs along the rear edge of Rotwein's property, stating, "that's not really a feasible approach" because there is

"a steep drop-off and then we have mature vegetation" at the rear of the property.

After Brenneman's testimony, the hearing was continued to March 24, 2004, to allow Rotwein to submit additional materials required by § 59–A–4.22(a)(1) of the zoning ordinance.[2] When the Board reconvened on that date, Brenneman further noted that the lot was too narrow to build the garage on the side of the house. He also stated:

> Regarding topography, this property has a change of grade across from front to back, as well as from right to left. If we were to try and put a garage anywhere on the rear of the property or on the lower left side of the property, we would not achieve the goal of putting a garage at the main living level, which is necessary for access. . . .

Rotwein's son, who represented her in this matter, then asked Brenneman, "Are you familiar with any other extraordinary conditions that might exist in this situation? And let me lead you, as such as security or accessibility that might be issues in this particular garage being built in this fashion?" When Brenneman began to talk about the elderly Rotwein's mobility problems, Board Chairman Donald Spence interrupted, prompting the following exchange:

> MR. SPENCE: I mean, now we're talking about the personal circumstances, and not dealing with the property. And as you know, counsel, that's not relevant to this proceeding.
>
> MR. ROTWEIN: No, I believe under your code it asks for any other extraordinary situations that might exist, such as an elderly woman.

---

**2.** Section 59–A–4.22(a)(1) of the Montgomery County Zoning Ordinance requires that each application for a variance must attach a statement that includes "[s]urvey plats or other accurate drawings showing boundaries, dimensions, area, topography and frontage of the property involved, as well as the location and dimensions of all structures existing and proposed to be erected, and the distances of such structures from the nearest property lines." Because Rotwein had not included, with her application, a site plan showing "the location and dimensions of all structures existing and proposed to be erected," the hearing was continued to allow her to submit that document.

MR. SPENCE: Relating to the property, counsel. That's it.

Board Chairman Spence asked Rotwein how the property was unique or peculiar, and Rotwein responded, "it's the narrowest lot in the whole neighborhood .... which makes ... putting this garage a requirement of going into the side yard and front yard setbacks, because of the configuration of the lot."

A discussion by the Board of Rotwein's application ensued. During that discussion, the Board noted that the "uniqueness" inquiry requires comparing the subject property with adjoining properties. As to whether the property was unique, Board Chairman Spence noted that the evidence indicated that the property is "a substantial percentage more narrow" than neighboring lots. The Board also questioned whether Rotwein's "hardship" was "self-imposed," in that it was Rotwein's choice to erect a carport, a tennis court, and a pool, thereby limiting potential locations for a two-car garage.

Later, the Board issued an opinion denying Rotwein's application. Specifically, it found that Rotwein's application did not meet the requirements of § 59–G–3.1(a) or (b). With respect to subsection (a), it opined:

> The petitioner contends that the requested variances are warranted because of the exceptional narrowness of the property. While the property does appear to be narrower than other lots in the neighborhood, the petitioner has failed to show how this condition results in a practical difficulty in complying with the front and side setback requirements.
>
> . . .
>
> In this case, the petitioner's site plan ... indicates that there is sufficient room within the building envelope of the property to locate a reasonably sized garage in the front of the house (e.g., where the carport is presently located.) The petitioner would have difficulty meeting the front and side setbacks only because she proposed to detach the garage and separate it from the house. This is a matter of

convenience, and does not rise to the level of a practical difficulty.

With respect to subsection (b), the Board found that, "because there is sufficient room within the building envelope of the property to locate a reasonably sized garage, either in front or to the rear of the house, the requested variances for the construction of a one-story addition are not the minimum reasonably necessary." Since failure to meet any criterion enumerated in the ordinance results in denial of the variance, the Board must, it observed, deny Rotwein's petition.

On May 20, 2004, Rotwein filed a petition for judicial review in the Circuit Court for Montgomery County. On July 19, 2004, Montgomery County moved to intervene as respondent on the grounds that it had a direct interest in the case: "the proper administration and interpretation of its laws." On August 11, 2004, the circuit court granted Montgomery County's motion to intervene.

Following a hearing on November 3, 2004, the circuit court issued an order on November 16, 2004, reversing the decision of the Board. Then, remanding the case to the Board of Appeals, it ordered the Board of Appeals to apply the following language from *North v. St. Mary's County:*

"Uniqueness" of a property for zoning purposes requires that the subject property have an inherent characteristic not shared by other properties in the area, *i.e.,* its shape, topography, subsurface condition, environmental factors, historical significance, access or non-access to navigable waters, practical restrictions imposed by abutting properties (such as obstructions) or other similar restrictions. *In respect to structures, it would relate to such characteristics as unusual architectural aspects* and bearing or party walls.

99 Md.App. at 514, 638 A.2d 1175 (emphasis added).

And it further ordered the Board to "consider such additional evidence, if any, presented by [Rotwein] to determine whether an unusual architectural aspect or unusual architectural aspects exist within the holding of *North v. St. Mary's County* that require the Board's consideration in determining

whether the requested variance should or should not be granted."

## DISCUSSION

■■■ Montgomery County contends that the Board of Appeals was correct in denying Rotwein's application for a zoning variance. In reviewing that determination, we apply the substantial evidence test. That test requires us to affirm an agency decision, if, after reviewing the evidence in a light most favorable to the agency, we find "a reasoning mind reasonably could have reached the factual conclusion the agency reached." *Bulluck v. Pelham Wood Apts.*, 283 Md. 505, 512, 390 A.2d 1119 (1978) (quoting *Dickinson–Tidewater v. Supervisor*, 273 Md. 245, 256, 329 A.2d 18 (1974)). Indeed, we may not substitute our judgment for that of the Board of Appeals unless the agency's conclusions were not supported by substantial evidence or were premised on an error of law. *Stansbury v. Jones*, 372 Md. 172, 182, 184, 812 A.2d 312 (2002). And, in determining whether the agency's conclusions were premised on an error of law, we ordinarily give "considerable weight" to "an administrative agency's interpretation and application of the statute which the agency administers." *Bd. of Physician Quality Assurance v. Banks*, 354 Md. 59, 68–69, 729 A.2d 376 (1999).

■■■ Section 59–G–3.1(a) of the Montgomery County Zoning Ordinance requires a "variance" applicant to prove that, owing to some characteristic "peculiar to a specific parcel of property, the strict application of these regulations would result in peculiar or unusual practical difficulties to, or exceptional or undue hardship upon, the owner of such property." To determine whether that has been done, the Board must engage in the following two-step analysis:

> The first step requires a finding that the property whereon structures are to be placed (or uses conducted) is—in and of itself—unique and unusual in a manner different from the nature of surrounding properties such that the uniqueness and peculiarity of the subject property causes the zoning

provision to impact disproportionately upon that property. Unless there is a finding that the property is unique, unusual, or different, the process stops here and the variance is denied without any consideration of practical difficulty or unreasonable hardship. If that first step results in a supportable finding of uniqueness or unusualness, then a second step is taken in the process, *i.e.*, a determination of whether practical difficulty and/or unreasonable hardship, resulting from the disproportionate impact of the ordinance *caused by* the property's uniqueness, exists.

*Cromwell v. Ward*, 102 Md.App. 691, 694–95, 651 A.2d 424 (1995) (emphasis in original).

 Other than to remark that the lot "appear[ed] to be narrower than other lots in the neighborhood," the Board made no factual findings regarding uniqueness. But we need not remand for such findings because the Board correctly ruled that Rotwein failed to demonstrate "practical difficulties." That deficiency alone was sufficient to defeat her application.

 As stated above, the Montgomery County Zoning Ordinance requires an applicant to prove that, owing to a unique characteristic of the property, the strict application of the ordinance "would result in peculiar or unusual practical difficulties to, or exceptional or undue hardship upon, the owner of such property." § 59–G–3.1(a). The determination of which standard to apply, "practical difficulties" or "undue hardship," rests on which of two types of variances is being requested: "area variances" or "use variances." Area variances are variances "from area, height, density, setback, or sideline restrictions, such as a variance from the distance required between buildings." *Anderson v. Bd. of Appeals, Town of Chesapeake Beach*, 22 Md.App. 28, 37, 322 A.2d 220 (1974). Use variances "permit[ ] a use other than that permitted in the particular district by the ordinance, such as a variance for an office or commercial use in a zone restricted to residential uses." *Id.* at 38, 322 A.2d 220. Because the changes to the character of the neighborhood are considered

less drastic with area variances than with use variances, the less stringent "practical difficulties" standard applies to area variances, while the "undue hardship" standard applies to use variances. *See Loyola Fed. Savs. & Loan Ass'n v. Buschman,* 227 Md. 243, 249, 176 A.2d 355 (1961).

The Montgomery County Zoning Ordinance authorizes only area variances; it, in fact, expressly prohibits the Board of Appeals from granting a variance "to authorize a use of land not otherwise permitted." § 59–G–3.1(d). Because the ordinance is worded in the disjunctive—"peculiar or unusual practical difficulties to, *or* exceptional or undue hardship upon"— and because the ordinance authorizes only area variances, the less stringent "practical difficulties" standard applies:

> When the terms unnecessary hardship (or one of its synonyms) and practical difficulties are framed in the disjunctive ("or"), Maryland courts generally have applied the more restrictive hardship standard to use variances, while applying the less restrictive practical difficulties standard to area variances because use variances are viewed as more drastic departures from zoning requirements.

*Belvoir Farms Homeowners Ass'n, Inc. v. North,* 355 Md. 259, 276 n. 10, 734 A.2d 227 (1999).

**** In determining whether practical difficulties exist, the zoning board must consider three factors:

> 1) Whether compliance with the strict letter of the restrictions governing area, setbacks, frontage, height, bulk or density would unreasonably prevent the owner from using the property for a permitted purpose or would render conformity with such restrictions unnecessarily burdensome.

> 2) Whether a grant of the variance applied for would do substantial justice to the applicant as well as to other property owners in the district, or whether a lesser relaxation than that applied for would give substantial relief to the owner of the property involved and be more consistent with justice to other property owners.

3) Whether relief can be granted in such fashion that the spirit of the ordinance will be observed and public safety and welfare secured.

*Anderson,* 22 Md.App. at 39, 322 A.2d 220 (quoting *McLean v. Soley,* 270 Md. 208, 214–15, 310 A.2d 783 (1973)).

 That means that an applicant must show more than simply that the building "would be suitable or desirable or could do no harm or would be convenient for or profitable to its owner." *Kennerly v. Mayor & City Council of Baltimore,* 247 Md. 601, 606–07, 233 A.2d 800 (1967). He or she must demonstrate that the application of the ordinance to the unique characteristics of the land would cause "peculiar or unusual practical difficulties" that justify the variance requested. *Cromwell,* 102 Md.App. at 706, 651 A.2d 424. Furthermore, and of particular relevance to this case, as it formed the basis of the Board's decision, the "peculiar or unusual practical difficulties" must not be the result of the applicant's own actions. *See id.*

In support of her "peculiar or unusual practical difficulties" claim, Rotwein asserts two bases. The first is that, as an elderly woman, she wishes to have the ability to exit her car and enter her house without being exposed to "the elements." The second is that other sizes or locations for the garage would be substantially more expensive than the size and location proposed. But neither of these two grounds necessarily amounts to "peculiar or unusual practical difficulties," and, therefore, the Board did not err in denying Rotwein's requests for variances.

The Board found that, because there was ample room elsewhere within the setbacks to build a garage, Rotwein's chosen location, set some distance apart from the house, was "a matter of convenience, and [did] not rise to the level of a practical difficulty." The Board also found that any hardship that Rotwein did demonstrate was the result of improvements to the property and, therefore, self-created and did not justify the variances. These findings were supported by substantial evidence.

Rotwein's architect, Dean Brenneman, testified that alternative locations for the garage were possible, albeit financially undesirable. It was possible, he observed, to simply enclose the existing carport and relocate the front door. He also stated that the garage could be built closer to the house or that a one-car garage could be built within the setback requirements, though the former would require significant regrading of Rotwein's land while the latter would reduce the value of her property.

Thus, Brenneman's testimony established that either a one-car or a two-car garage could, in fact, be constructed at a location on Rotwein's property that would not require variances, though at some additional expense to Rotwein or economic loss to her property. That testimony leaves Rotwein's claim that there was "no credible evidence in the record that an attached garage could be located elsewhere on the property, even if there were no other improvements located in the rear yard" in tatters.

Rotwein also argues that, as an elderly woman, she needs to have an enclosed garage to protect her from exposure to "the elements." That may be so, but it does not constitute "peculiar or unusual practical difficulties." As noted above, the "practical difficulty" standard requires the zoning board to find "more than that the building allowed would be suitable or desirable or could do no harm or would be convenient for or profitable to its owner." *Kennerly,* 247 Md. at 606, 233 A.2d 800; *see also Carney v. City of Baltimore,* 201 Md. 130, 136–37, 93 A.2d 74 (1952).

In *Carney,* an applicant sought an exception [3] from setback restrictions to add a first-floor bedroom and bath to his house. 201 Md. at 133, 93 A.2d 74. The exception was requested

---

**3.** "It should be borne in mind that because of the wording of the Baltimore City Zoning Ordinance, Baltimore City cases frequently arising in that city dealing with special exceptions and variances use these terms more or less interchangeably." *Loyola Fed. Savs. & Loan Ass'n v. Buschman,* 227 Md. 243, 249 n. 2, 176 A.2d 355 (1961) citing *Marino v. City of Baltimore,* 215 Md. 206, 216, 137 A.2d 198 (1957).

because Mrs. Carney had a "physical condition" that made it difficult for her to climb stairs. *Id.* The Court of Appeals upheld the denial of the exception, noting that "[t]he need sufficient to justify an exception must be substantial and urgent and not merely for the convenience of the applicant." *Id.* at 137, 93 A.2d 74. There was nothing "substantial and urgent" about Rotwein's desire not to be exposed to the elements when entering her house, and, therefore, it did not constitute "peculiar or unusual practical difficulties" warranting a variance.

None of the potential problems advanced by Rotwein— exposure to the elements or the expenditures required to build a new front door or re-grade the property or the undesirability of a one car garage in a two-car garage neighborhood—rise to the level of "peculiar or unusual practical difficulties." As the Court of Appeals observed in *Carney:*

> The expression "practical difficulties or unnecessary hardships" means difficulties or hardships which are peculiar to the situation of the applicant for the permit and are of such a degree of severity that their existence is not necessary to carry out the spirit of the ordinance, and *amounts to a substantial and unnecessary injustice to the applicant.* Exceptions on the ground of "practical difficulties or unnecessary hardships" should not be made except where the burden of the general rule upon the individual property would not, because of its unique situation and the singular circumstances, serve the essential legislative policy, and so would constitute *an entirely unnecessary and unwarranted invasion of the basic right of private property.*

*Id.* (emphasis added).

 Economic loss alone does not necessarily satisfy the "practical difficulties" test, because, as we have previously observed, "[e]very person requesting a variance can indicate some economic loss." *Cromwell,* 102 Md.App. at 715, 651 A.2d 424 (quoting *Xanthos v. Bd. of Adjustment,* 685 P.2d 1032, 1036–37 (Utah 1984)). Indeed, to grant an application for a variance any time economic loss is asserted, we have warned,

"would make a mockery of the zoning program." *Cromwell,* 102 Md.App. at 715, 651 A.2d 424.

██ Financial concerns are not entirely irrelevant, however. The pertinent inquiry with respect to economic loss is whether "it is impossible to secure a reasonable return from or to make a reasonable use of such property." *Marino v. City of Baltimore,* 215 Md. 206, 218, 137 A.2d 198 (1957). But Rotwein has not demonstrated that, unless her application is granted, it will be "impossible [for her] to make reasonable use of her property." *Id.* Indeed, she has made more than reasonable use of her property, as it houses not only her residence, but, among other things, a swimming pool and a tennis court.

Furthermore, the "hardships" about which Rotwein complains are self-created and, as such, cannot serve as a basis for a finding of practical difficulty. *See Cromwell,* 102 Md.App. at 722, 651 A.2d 424. Rotwein contends that the requested location for her garage is the only feasible location. But that is so only because of the location of the other improvements to the property, and the decision whether to build those improvements and where to place them was Rotwein's. *See id.; see also Steele v. Fluvanna County Bd. of Zoning Appeals,* 246 Va. 502, 436 S.E.2d 453, 456–57 (1993).

██ Finally, there was substantial evidence to support the Board's conclusion that the variance requested would not be "the minimum reasonably necessary" under § 59–G–3.1(b). As noted above, there was extensive testimony regarding alternative locations and configurations for the proposed garage, which would not have required a variance. In fact, as we have previously recounted, Rotwein's own architect testified that it would be possible, though not financially desirable, to build a one-car garage, or to build a two-car garage closer to the house, without violating the setback restrictions. Because there was, as the Board found, "sufficient room within the building envelope of the property to locate a reasonably sized garage," the Board's conclusion that "the requested variances for the construction of a one-story addition [were]

not the minimum reasonably necessary" should not have been disturbed.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE DECISION OF THE BOARD OF APPEALS FOR MONTGOMERY COUNTY. COSTS TO BE PAID BY APPELLEE.**