*Dan's Mountain Wind Force, LLC v. Allegany Cnty. Bd. of Zoning Appeals*, No. 804, September Term 2016.

Filed March __, 2018.

**HEADNOTES**

**Land Use – Zoning Variances – General**

Zoning variances are subject to a two-step test: *first*, the property must be unique, and *second*, that uniqueness must cause a practical difficulty or unnecessary hardship for the applicant.

**Land Use – Zoning Variances – Uniqueness**

For a property to be unique under the zoning variance analysis, the "unique" features of the property must have a nexus with the area of zoning law from which a variance is sought.

**Land Use – Zoning Variances – Uniqueness**

When conducting the uniqueness analysis for a zoning variances, the body determining whether a variance is to be granted must conduct the following inquiry individually for each variance applied for:

1) Whether the unusual factors identified by the applicant are, in fact, features of the subject property;

2) Whether the effect of those factors, taken together, have a nexus with the area of zoning law from which a variance is sought; and

3) Whether that effect is unique as compared to similarly situated properties.

**Land Use – Zoning Variance – Practical Difficulty and Unnecessary Hardship**

When conducting the zoning variance analysis, the practical difficulty standard is proper when the requested variance is an "area variance," and the unnecessary hardship standard is proper when the requested variance is a "use variance."

Circuit Court for Allegany County
Case No. 01-C-15-043252-F

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 804

September Term, 2016

_____

DAN'S MOUNTAIN WIND FORCE, LLC,
*et al.*

v.

ALLEGANY COUNTY BOARD OF ZONING
APPEALS

_____

Meredith,
Friedman,
Pierson, W. Michel
　　(Specially Assigned),

JJ.

_____

Opinion by Friedman, J.
_____

Filed:  April 3, 2018

This case concerns the rejection of an application for variances to the setback and separation distance requirements for a wind farm in Allegany County. We hold that the Allegany County Board of Zoning Appeals did not properly apply the uniqueness test or the practical difficulty test necessary for an applicant to prove eligibility for a variance. We explain how such analyses should be conducted and remand for the Board to try again.

**FACTS**

Dan's Mountain Wind Force, LLC seeks to construct 17 wind turbines and an electrical substation on leased property on Dan's Mountain. The Allegany County Code permits wind turbines as a special exception in the zoning district in which the project is proposed.[1] And, most importantly for present purposes, construction of the turbines is subject to (1) a minimum separation distance of 2000 feet from any residential structure; and (2) a minimum setback distance of no less than three times the height of the turbine. ACC § 360-92(B)(3).[2] Because the proposed sites of some of the turbines were within either the setback or separation distances, or both, Wind Force sought variances. It also

---

[1] The site is partially located in both an A Agricultural District and a C Conservation District. These districts both require special exceptions for wind turbines. Allegany County Code ("ACC") § 360-83(B)(13) (2011); *id.* § 360-84(A).

[2] At the time of Wind Force's application this requirement was found in Section 360-92(A)(2) of the Allegany County Code. ACC § 360-92(A)(2) ("The following separation distances shall be maintained for industrial wind energy conversion systems [what we are calling, colloquially, wind turbines] … [2000] feet from any residential structure."). The Allegany County Zoning Code was substantially revised by the County Council in 2017, though the section that concerns wind turbines was not changed. Allegany County Bill 2-17 (effective Mar. 9, 2017). It was renumbered and may now be found at Section 360-107. For the remainder of this Opinion, we shall only refer to the 2011 edition of the County Code, which was in force at the time of Wind Force's application.

applied for the requisite special exception. Critically, Wind Force enlisted the support of the neighboring property owners, who joined Wind Force as co-applicants.

The Board's opinion summarized the factual and procedural background:

> [Wind Force] has proposed to construct 17 wind turbines … on leased property located on Dan's Mountain. … The Allegany County Code requires that wind turbines have a minimum separation distance of [2000] feet from any residential structure and a [minimum] setback property line distance of "three times the height of the unit" which, in this case, is [955] feet. [T]o meet the criteria of the zoning code, a variance to the separation distance is required for [8] residences and a variance to the setback requirements are necessary at [2] locations. All of the subject property owners requesting a variance to the separation distance are co-applicants and have executed variance authorizations. …
>
> [5] of the [8] co-applicant property owner[s'] variance requests involve residential structures within the 2000 foot separation distance of multiple wind turbines. As such … evidence presented indicates that the Board will have to review and grant [26] separate variances to get the project in line with the existing zoning code.

At the hearing, Wind Force presented expert testimony that while Dan's Mountain is an ideal location for a wind farm, there are many factors limiting the specific locations on which turbines can be placed, including the:

(1)     topography of the property;

(2)     boundaries of Wind Force's property and that of its neighbors;

(3)     proximity of existing dwellings and other structures;

(4)     stream channels;

(5)     habitat of the Allegheny Woodrat;[3]

(6)     habitat of Black-fruited Mountain Rice;[4]

(7)     existence, location, and extent of wetland areas;

(8)     prior strip mining activity;

(9)     communication beam paths passing over and through the properties; and

(10)    technical specifications of the wind turbines themselves.

Thus, the thrust of Wind Force's expert testimony was that these constraints required it to propose placing the turbines in very specific locations on Dan's Mountain and that the requested variances of the minimum separation distance and setback requirements were necessary for the project. The Board was not persuaded. The Board found that Wind Force had failed to meet its burden of proof in "three critical areas." Specifically, the Board found:

> First, the Applicant failed to establish that the subject properties were sufficiently unique as to each other as to warrant a variance. Second, the Applicant failed to

---

[3] The Court takes judicial notice that the Allegheny Woodrat (*Neotoma magister*) is listed by the Maryland Department of Natural Resources ("DNR") as an endangered species. COMAR 08.03.08.04(C)(9)(i). It is not, however, listed by the U.S. Fish and Wildlife Service under the federal Endangered Species Act. Wind Force's expert, Matthew Brewer, testified that DNR determined that the project site includes the habitat of the Allegheny Woodrat. According to Brewer, DNR established the appropriate buffers for this habitat, which Wind Force then incorporated as constraints on the site planning process.

[4] The Court takes judicial notice that Black-fruited Mountain Rice (*Piptatherum racemosum*) is listed by DNR as a threatened species. COMAR 08.03.08.08(C)(35) (listed as "Black-fruit mountain-ricegrass"). It is not, however, listed by Fish and Wildlife under the federal Endangered Species Act. Brewer testified that, as with the Allegheny Woodrat discussed *supra* n.3, DNR established an appropriate buffer around the rice habitat and Wind Force adopted the buffer as a constraint on the site planning process.

demonstrate that the multiple number of variances requested were in harmony with the spirit and intent of the zoning regulations. Finally, the Applicant failed to establish that any co-applicant lost "reasonable use" of their respective properties.

As a result, the Board denied the variance requests and, because the special exception application was premised on the variances, denied the special exception as well. Wind Force consolidated its appeals of the Board's decisions into a single petition for judicial review. The circuit court affirmed. Wind Force noted a timely appeal.

## STANDARDS OF REVIEW

When reviewing the decision of an administrative agency, this court "looks through the circuit court's [decision] … and evaluates the decision of the agency." *People's Counsel for Balt. Cnty. v. Surina*, 400 Md. 662, 681 (2007). Thus, in the present case, we consider whether the administrative agency—the Allegany County Board of Zoning Appeals—erred. Wind Force contends that the Board erred both in its factual findings and in its legal determinations. We will, therefore, review the Board's factual findings for whether they are supported by substantial evidence in the record, and its legal conclusions without deference.[5] *Md. Bd. of Pub. Works v. K. Hovnanian's Four Seasons at Kent Island, LLC*, 425 Md. 482, 514 n.15 (2012).

---

[5] We frequently defer to an agency's interpretation of its *own* regulations. *Surina*, 400 Md. at 682 ("When determining the validity of those legal conclusions reached by the zoning body … 'a degree of deference should often be accorded the position of the administrative agency' whose task it is to interpret the ordinances and regulations the agency itself promulgated.") (quoting *Marzullo v. Kahl*, 366 Md. 158, 172 (2001)). Because the legal errors alleged by Wind Force, however, are premised on the Board's interpretation of general Maryland zoning law, rather than on an interpretation of Allegany

## ANALYSIS

Allegany County has adopted the Code Home Rule form of county government. As a result, it has been granted the express power to adopt zoning laws, Md. Code Local Government ("LG") § 10-324, and the express power to create an appeal board to review variance applications. LG § 10-305(a)(1). The County Commissioners of Allegany County have adopted a zoning ordinance, which is codified in Chapter 360 (Land Development), Part 4 (Zoning) of the Allegany County Code. The Allegany County Code doesn't separately describe the procedure or standards for granting a zoning variance. Rather, the Code only mentions zoning variances in the "definitions" section:

> **[ZONING] VARIANCE** [is defined as a] change of density, bulk[,] or area requirements,[6] with respect to the location of a building or a use on a lot of record, where the physical or natural character of the lot would otherwise preclude the use of the lot.

ACC § 360-59(A)(1). Although Allegany County could prescribe standards for variances, it has not. And, in the absence of locally adopted standards, Maryland's common law regarding variances controls.

_____

County-specific zoning law, we need not accord any extra deference to the Board's expertise when examining its legal conclusions.

[6] The language limiting variances to "changes of density, bulk[,] or area requirements," indicates that Allegany County permits only *area* variances, as distinguished from *use* variances. This is a common limitation in Maryland. *See, e.g.*, Md. Code Land Use ("LU") § 4-206(b)(1) (permitting only area variances in commissioner counties and municipalities); Montgomery County Code § 59-G-3.1(d) (allowing area variances but not use variances in Montgomery County) (described in *Montgomery Cnty. v. Rotwein*, 169 Md. App. 716, 729 (2006)). As we shall see in Part II, *infra*, the determination of whether a proposed variance is an area variance or a use variance changes the legal standard for it to be granted.

A variance "permits a use [that] is prohibited and presumed to be in conflict with [an] ordinance." *North v. St. Mary's Cnty.*, 99 Md. App. 502, 510 (1994). The burden rests on the applicant to overcome the presumption that the proposed use is in conflict with the ordinance. *Id.* Courts have recognized a two-part test to determine whether a variance should be granted in a particular case. *See, e.g.*, *Cromwell v. Ward*, 102 Md. App. 691, 694-95 (1995). The first requirement, uniqueness,[7] looks at whether:

> the property whereon structures are to be placed (or uses conducted) is—in and of itself—unique and unusual in a manner different from the nature of surrounding properties such that the uniqueness and peculiarity of the subject property causes the zoning provision to impact disproportionately upon that property.

*Id.* at 694. If the applicant successfully proves that the property in question is unique, then the reviewing body moves to the second requirement—practical difficulty or unnecessary hardship—and examines:

> whether practical difficulty and/or [unnecessary] hardship, resulting from the disproportionate impact of the ordinance caused by the property's uniqueness, exists.

---

[7] There is very little case law in Maryland that discusses the uniqueness requirement with any detail. The two most important uniqueness cases were decided in the mid-1990s. *Cromwell v. Ward*, 102 Md. App. 691 (1995) (Cathell, J.); *North v. St. Mary's Cnty.*, 99 Md. App. 502 (1994) (Cathell, J.). And, in both of those cases, this Court reversed the grant of a variance. *Cromwell*, 102 Md. App. at 726; *North*, 99 Md. App. at 519-20. Moreover, in *Cromwell*, Judge Cathell expressed skepticism about prior cases affirming variances. 102 Md. App. at 711 ("[I]n our review of the reported Maryland cases since the creation of the state zoning enabling act in 1927, we have found only five reported Maryland cases in which the grant of a variance has been affirmed or the denial of a variance has been reversed. … All of these cases were decided over a twelve-year period and the last of them was decided more than twenty-one years ago. Three of them … appear to be somewhat at odds with accepted Maryland law.").

*Id.* at 695 (emphasis omitted). This two-step process must be repeated for each variance request.

Wind Force challenges the Board's conclusions on both steps of the variance analysis: (1) uniqueness; and (2) practical difficulty or unnecessary hardship.

## I.    UNIQUENESS

The Board found that Wind Force had not satisfied its burden to demonstrate uniqueness. We will begin by discussing the Board's uniqueness finding. We next discuss the uniqueness requirement and its requirement of nexus between the variance requested and the unique attributes of the property. We then discuss the manner in which this analysis should be conducted. We will discuss, finally, Wind Force's argument that zoning merger should apply to this case. Because we conclude that the Board used the incorrect uniqueness analysis, we remand so that the Board may, as it deems appropriate, reopen the hearing and reconsider the applications using the analysis discussed here.

### A.    The Board's Uniqueness Finding

The Board found that no applicant property was unique, stating that:

> Mining is not unusual in the western panhandle of Allegany County or in that particular area. All of the surrounding properties have similar habitat issues. All of these properties sit similarly in relation to the communication towers.

The Board considered each property, and each variance application, as separate and discrete properties, while addressing their potential uniqueness collectively.[8] With this

---

[8] The Board, it seems, believed it was required to choose between Wind Force's argument that all of the properties must be analyzed as a single unit under the doctrine of zoning merger, or that each property must be analyzed individually. When the Board, not

7

analysis, the Board found that all of the co-applicant properties were similar to each other, and thus, not unique. It did not take into consideration the particular effects that each of Wind Force's listed factors, *supra* p. 2-3, had on the placement of turbines on each particular property, or how each factor affected each property differently. As we shall discuss, the correct test requires the Board to look at each of the factors identified by an applicant as making the property unique, and determine whether those factors, together, affect each property.

## B. The Law of Uniqueness

To receive a zoning variance, a property must be unique. Maryland cases have used the terms "unique," "unusual," and "peculiar" to describe this step in the variance analysis. We made clear in *Cromwell* that these words are used more or less interchangeably to mean "unusual." 102 Md. App. at 703. The uniqueness analysis examines the unusual characteristics of a specific property in relation to the other properties in the area, and the nexus between those unusual characteristics and the application of the aspect of the zoning law from which relief is sought. *See Cromwell*, 102 Md. App. at 719 ("[V]ariances should only be granted when the uniqueness or peculiarity of a subject property is not shared by the neighboring property *and* where the uniqueness of that property results in an extraordinary impact upon it by the operation of the statute.") (emphasis added). Stated another way:

without justification, *see infra* Part I.D, found that zoning merger was inappropriate in this case, it proceeded to analyze each property individually. As we shall discuss, this analysis was incorrect.

8

> Where by reason of the exceptional narrowness, shallowness, or unusual shape of a specific property, or by reason of exceptional topographic conditions or other extraordinary situations or special conditions of property the literal enforcement would make it exceptionally difficult to comply.

*North*, 99 Md. App. at 514-15 (cleaned up).[9]

The purpose of the uniqueness or unusual element of the variance test is to determine whether the zoning law's effect on a property is particularized to that given property. We can identify three principal reasons for this requirement. *First*, if the allegedly restrictive effect of the zoning law is not unusual, and a characteristic is shared by many properties, the problem ought to be addressed by legislation, not variances:

> The claimed hardship may be caused by general neighborhood conditions that cause the property to be unusable as zoned. If that is the basis of the owner's claim, it is unlikely that only the owner's parcel will be affected; in fact it is likely that many other parcels in the neighborhood will be affected. … In theory, then, an owner's appropriate remedy in cases where the hardship is not unique is to seek a rezoning.

3 RATHKOPF'S THE LAW OF ZONING AND PLANNING § 58:11 (4th ed. 2017). This purpose for the uniqueness requirement has been recognized by some of our sister state courts. *Arndorfer v. Sauk Cnty. Bd. of Adjustment*, 469 N.W.2d 831, 834 (Wisc. 1991); *Clark v. Bd. of Zoning App. of Town of Hempstead*, 92 N.E.2d 903, 904 (N.Y. 1950) ("If there be a hardship, which … is common to the whole neighborhood, the remedy is to seek a change

---

[9] "Cleaned up" is a new parenthetical intended to simplify quotations from legal sources. *See* Jack Metzler, *Cleaning Up Quotations*, J. APP. PRAC. & PROCESS (forthcoming 2018), https://perma.cc/JZR7-P85A. Use of (cleaned up) signals that to improve readability but without altering the substance of the quotation, the current author has removed extraneous, non-substantive clutter such as brackets, quotation marks, ellipses, footnote signals, internal citations or made un-bracketed changes to capitalization.

in the zoning ordinance itself."). A property that is affected uniquely may be entitled to relief through a variance, while a property owner experiencing a more common problem must seek a legislative remedy.[10] *Second*, and similarly, the uniqueness analysis guarantees that a granted variance cannot act as a precedent in an application regarding another property. If the effects of the zoning law operate similarly to the way in which they operate on a separate applicant property, the uniqueness requirement is likely not satisfied. *Finally*, in an analogous situation, the Court of Appeals has noted that uniformity of the application of zoning laws—accomplished in part by requiring that properties exempt from those laws be unique—performs a "critically essential function," by "protect[ing] the landowner from favoritism towards certain landowners within a zone by the grant of less onerous restrictions than are applied to others within the same zone." *Mayor and Council of Rockville v. Rylyns Enters.*, 372 Md. 514, 536 (2002) (discussing piecemeal zoning).

The circumstances of this case, and the Board's decision below, also highlight an aspect of uniqueness that was always present but which has seldom been remarked upon—the requirement of nexus. "[The owner] must prove … a connection between the property's inherent characteristics and the manner in which the zoning law hurts the landowner." *Trinity Assembly of God of Balt. City v. People's Counsel of Balt. Cnty.*, 407 Md. 53, 82 (2008). That is, the unique aspect of the property must relate to—have a nexus with—the aspect of the zoning law from which a variance is sought. *Id.* Without the nexus requirement, a motivated sophist could always find similarities or differences between any

---

[10] As part of its conclusion, the Board found that 26 variances were simply too many. For some projects, 26 variances will be a lot; for others it won't. There is no magic number.

two properties so as to defeat or support a uniqueness finding. Every property is similar to every other property in some respects (for example, "there are some living things on this property"). And every property can be distinguished from every other property in some other respect (for example, "this property contains exactly *x* number of trees and *y* number of woodrats"). Rather than semantic tricks, the proper question is whether the property is unique in the way that this particular aspect of the zoning code applies to it.

A zoning treatise illuminates the nexus requirement:

> Uniqueness must be related to the land … . The attribute must be related to the application of the ordinance from which relief is sought. Thus, a minimum width requirement for a parcel makes little sense for a pie shaped lot[;] likewise for a setback regulation that puts a house into an arroyo or ravine.

Barlow Burke, UNDERSTANDING THE LAW OF ZONING AND LAND USE CONTROLS 159 (3d ed. 2013). Extending Professor Burke's examples, it would make no sense to consider the narrowness of a pie-shaped lot as a unique attribute in considering whether to waive, for example, a height or density restriction. Our cases recognize this requirement. *See Trinity Assembly*, 407 Md. at 82; *Cromwell*, 102 Md. App. at 721 ("[A] property's peculiar characteristic or unusual circumstances … must exist in conjunction with the ordinance's … impact on the specific property because of the property's uniqueness."). The uniqueness, then, must have a nexus with the aspect of the zoning law from which a variance is sought.

## C.     Analysis

We hold that the Board erred in its uniqueness analysis in three ways: (1) by failing to properly identify each property's unusual attributes to compare them to other properties; (2) by failing to understand the requirement of nexus; and (3) by using too generalized an

11

analysis. We will discuss each error, and then describe the proper mode of analysis that the Board must conduct for uniqueness.

*First*, the Board focused on comparing the co-applicant properties to each other without looking at other surrounding properties. Whether two properties share common features cannot be determined by reference to a third property. The governing law instead requires an investigation, first, of the unusual features of the property for which the variance is sought. Then the investigator must look at surrounding properties to see if they share those same unusual features. *Cromwell*, 102 Md. App. at 694 ("[Uniqueness] requires a finding that the property whereon structures are to be placed (or uses conducted) is—in and of itself—unique and unusual in a manner different from the nature of surrounding properties such that the uniqueness and peculiarity of the subject property causes the zoning provision to impact disproportionately upon that property."). Therefore, the Board erred in its analysis by failing to properly identify each applicant property's unusual characteristics, and erred again by comparing them only to the other co-applicant properties and not other surrounding properties.

*Second*, relatedly, the Board failed to appreciate the nexus component of the uniqueness analysis. It is not enough to say that properties are similar or unique in a vacuum. Every two properties share common attributes, and every two properties differ in other attributes. Instead, the nexus component requires that the basis of comparison be the manner in which the aspect of the zoning law from which a variance is sought affects the subject property. In this case, the aspects of the zoning law from which a variance is sought are the separation and setback requirements. Therefore, the question must be: are there

12

features on the property that cause the separation and setback requirements to affect this applicant's individual property differently from the way it affects other surrounding properties?

*Finally*, while the Board correctly determined that each property was required to be individually unique, when conducting its analysis, it addressed all of the co-applicant properties collectively, and dismissed the various individual factors because the properties shared some general, common features. It is insufficient to determine, as the Board did, that every property was in some way affected by prior surface mining, animal and plant habitats, and communications towers. *Supra* at 7. To generalize the properties in this way negates the purpose of the uniqueness analysis by taking for granted that each factor affected each property in the same way. Thus, the Board erred by relying on generalizations about the individual co-applicant properties, the factors cited by Wind Force, and the variance requests.

On remand, the Board must conduct the appropriate analysis on each property, each factor, and each application. The proper analysis requires the following inquiry: *first*, the Board must determine whether the unusual factors identified by the applicant are, in fact, features of that particular property; *second*, the Board must determine whether the effect or effects those features have on the property, taken together, have a nexus with the part of the zoning law from which a variance is sought; and *third*, the Board must determine whether the effect of those factors on the property is unique as compared to similarly situated properties. The Board must conduct this analysis for each property, each factor, and each application. There are multiple applicants (Wind Force and the ten co-applicant

property owners), requesting multiple variances (twenty-six in total), and alleging that each property is unusual as compared to the other properties in various ways. The Board must consider each of these individually to determine whether each property is unique in a way that has a nexus with the setback and minimum separation distance requirements so as to require a variance. As always, it is the applicant, Wind Force's burden to provide the Board with the evidence it needs to accomplish its duties.

### D. Zoning Merger

Wind Force also argues that the Board erred in refusing to apply the principle of zoning merger to the various properties in this case. Zoning merger allows a property owner to merge adjacent, undersized parcels of land to form a tract that conforms to zoning regulations. *Friends of the Ridge v. Balt. Gas & Elec. Co.*, 352 Md. 645, 654 (1999) ("[Zoning merger is] a doctrine that seeks to prevent the proliferation or use of nonconforming, undersized lots by holding that they have been combined or merged into a larger parcel."). Here, according to Wind Force, if the properties on Dan's Mountain are viewed together as one tract, the property possesses unique physical and environmental characteristics in relation to other properties. Because we hold that the Board otherwise erred, we need not reach this issue.

We note that for zoning merger to apply in this case, however, we would have to hold that zoning merger applies not only when one owner *owns* the properties in fee simple, but also when a developer leases, or obtains licensing agreements over, the properties proposed for merger. Extending the law in this manner is not as simple as Wind Force imagines. The Maryland cases that permit zoning merger all arose in situations in which

14

the applicant owned the properties in fee simple. *Remes v. Montgomery Cnty.*, 387 Md. 52, 87 (2005); *Friends of the Ridge*, 352 Md. at 658 (holding that the "landowner" may exercise zoning merger).

Although no Maryland court has so far addressed whether common ownership is *required* for zoning merger, we are not confident that the Court of Appeals would allow the merger of properties not held in common ownership. Our zoning merger law has been influenced, at least in substantial part, by zoning merger law from New Jersey. *Friends of the Ridge*, 352 Md. at 654-61 (citing to and relying on New Jersey cases). The New Jersey Supreme Court has explicitly refused to apply zoning merger when the contiguous parcels are not in common ownership because of "the proliferation of merger litigation with complex proof problems and the loss of simplicity, uniformity[,] and predictability." *Jock v. Zoning Bd. of Adjustment of the Twp. of Wall*, 878 A.2d 785, 799 (N.J. 2005); *see also id.* at 806 ("The merger doctrine … applies only to adjacent undersized lots held in common legal title."). We believe there is a substantial likelihood that the Court of Appeals of Maryland would continue to follow New Jersey law and refuse to extend zoning merger to leased parcels or other ownership arrangements short of fee simple absolute. We do not resolve the question, however, and Wind Force is free, on remand, to advocate for zoning merger, if it chooses.

### E.     Conclusion

The Board did not apply the correct uniqueness test, and as a result misapplied the evidence that was presented to it. The Board thus incorrectly concluded that there was no evidence to support a finding of uniqueness. It is clear that Wind Force adduced evidence

15

of several features of each of the co-applicant properties that suggests that the separation and setback requirements operate differently on each of those properties than they operated on other surrounding properties. We decline, however, to rule on the merits of those arguments. That task is for the Board in the first instance, and we remand so that it may do so.

## II.    PRACTICAL DIFFICULTY OR UNNECESSARY HARDSHIP

The second step of the variance test examines whether the disproportionate effect of the ordinance, caused by the uniqueness of the property, creates practical difficulty for or unnecessary hardship on the owner of the property. *Cromwell*, 102 Md. App. at 694-95; *see also* LU § 4-206(b)(2) ("The modifications in a variance … (2) may only be allowed where … a literal enforcement of the zoning law would result in unnecessary hardship *or* practical difficulty as specified in the zoning law.") (emphasis added). These are two different standards: (1) a more lenient "practical difficulty" test; or (2) a more strict "unnecessary hardship" test. Although it is unclear on the face of its opinion, and the Board was not consistent in its terminology, it appears to us that the Board used the more stringent "unnecessary hardship" standard.[11] Wind Force argues that the Board should have used the more lenient "practical difficulty" standard.

"The determination of which standard to apply, 'practical difficulties' or '[unnecessary] hardship,' rests on which of two types of variances is being requested: 'area

---

[11] The Board, for instance, compares the variance request to the denied request in *North v. St. Mary's Cnty.*, which applied the unnecessary hardship standard. 99 Md. App. 502 (1994).

16

variances' or 'use variances.'" *Rotwein*, 169 Md. App. at 728. "[T]he less stringent 'practical difficulties' standard applies to area variances, while the '[unnecessary] hardship' standard applies to use variances." *Id.* at 729 (explaining that area variances do not change the character of the neighborhood as greatly as do use variances); *Zengerle v. Bd. of Cnty. Comm'rs for Frederick Cnty.*, 262 Md. 1, 21 (1971). *Area* variances, such as the variances requested by Wind Force, "are variances from area, height, density, setback, or sideline restrictions, such as a variance from the distance required between buildings." *Rotwein*, 169 Md. App. at 728. *Use* variances, by contrast, "permit a use other than that permitted in the particular district by the ordinance, such as a variance for an office or commercial use in a zone restricted to residential uses." *Id.* (cleaned up). As noted, Allegany County does not permit use variances. ACC § 360-59(B); *see supra* n.6.

The variances requested by Wind Force are area variances rather than use variances; they concern the property line setback and separation distance requirements. Thus, we hold that the Board should have reviewed the requests under the more lenient "practical difficulty" standard, as outlined in *Rotwein*. On remand, the Board should consider each of the variance applications using that legal standard.

## CONCLUSION

Because the Board erred in its ruling on uniqueness, and because the Board also erred when it applied the unnecessary hardship test, we remand the case to the circuit court for it to enter an order vacating the decision of the Board. The circuit court should then remand the case for the Board to review the requests for variances and for a special exception under the correct legal framework. *See Belvoir Farms Homeowners Ass'n Inc.*

17

*v. North*, 355 Md. 259, 270 (1999) ("[W]hen an administrative agency utilizes an erroneous standard and some evidence exists, however minimal, that could be considered appropriately under the correct standard, the case should be remanded so the agency can reconsider the evidence using the correct standard.").

**JUDGMENT OF THE CIRCUIT COURT FOR ALLEGANY COUNTY REVERSED AND REMANDED WITH INSTRUCTIONS FOR THE CIRCUIT COURT TO ENTER AN ORDER VACATING THE DECISION OF THE ALLEGANY COUNTY BOARD OF ZONING APPEALS AND REMANDING TO THE BOARD FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY ALLEGANY COUNTY.**