REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2366

September Term, 2012

---

DARLENE MATTHEWS

v.

HOUSING AUTHORITY OF
BALTIMORE CITY

---

Wright,
Matricciani,
Hotten,

JJ.

---

Opinion by Wright, J.

---

Filed: March 26, 2014

Appellant, Darlene Matthews ("Darlene"), appeals her termination from the Housing Choice Voucher Program ("HCVP") by appellee, the Housing Authority of Baltimore City ("HABC"), after the HABC learned that her husband, Gerald Matthews, Sr. ("Gerald"), had listed her HCVP residence as his mailing address, and it concluded that Gerald was residing in her household as an unauthorized occupant. Darlene received a HCVP termination notice dated April 4, 2012, and subsequently requested an informal hearing, which was held on May 16, 2012. By letter dated May 31, 2012, the HABC Hearing Officer informed Darlene that the HABC's decision to terminate would be upheld.

On June 14, 2012, Darlene filed a Petition for Administrative Mandamus in the Circuit Court for Baltimore City, asking the circuit court to review the HABC Hearing Officer's decision. Following a hearing on December 11, 2012, the court affirmed the HABC's decision. This timely appeal followed.

## Questions Presented

Darlene asks:

1.  Did the HABC Hearing Officer err as a matter of law when she concluded that allowing a non-household member to use the subsidized unit's address to receive mail was a HCVP violation?

2.  Does the HABC termination hearing record lack substantial evidence to support a finding that [Gerald] was living in [Darlene's] unit as an unauthorized occupant?

In its brief, the HABC initially responds by arguing that this Court is "without jurisdiction to hear th[is] appeal" pursuant to Md. Code (1973, 2013 Repl. Vol.), § 12-302(a) of the

Courts & Judicial Proceedings Article ("CJP").  We disagree as to the jurisdictional issue

and, upon review of the merits of the case, reverse the Hearing Officer's decision.

## Facts and Procedural History

The facts of this case are undisputed.[1]  Darlene and Gerald married in August

2002.  A few months later, they separated and Gerald moved out of Darlene's home at

Chapel Apartments, 3221 Esther Place, Baltimore City.  In 2004, when Chapel

Apartments was sold, Darlene received a Section 8[2] voucher through the HABC's HCVP.

Until late 2011, her participation in the HCVP was without incident.

On December 6, 2011, Darlene went to the HABC and requested that her son be

_____

[1] We gathered the facts from the informal hearing held on May 16, 2012.
Although no transcript was available – as the HABC does not record its termination
hearings – the Hearing Officer took handwritten notes, which were later converted to a
typed document that the parties stipulated was "an accurate transcription."

[2] Section 8 of the Housing Act of 1937, 42 U.S.C. Ch. 8.  The HCVP was
established by Congress to "aid[] low-income families in obtaining a decent place to live
and of promoting economically mixed housing."  42 U.S.C. § 1437f(a).  Under the
HCVP, the Department of Housing and Urban Development ("HUD") enters into
contracts with, and provides funding to, state public housing agencies ("PHAs"), which in
turn provide rental subsidies which low-income families use to rent housing in the private
rental market. 42 U.S.C. § 1437f(o); *Walker v. Dep't of Hous. & Cmty. Dev.*, 422 Md. 80,
83 (2011); 24 C.F.R. § 982.1(a)(1).  Demand for housing subsidies far exceeds supply,
and the HABC's HCVP waiting list is currently closed.  *See* HABC, *The Housing Choice
Voucher Administrative Plan*, 3-4 (2013), *available at*
http://static.baltimorehousing.org/doc/plansreports/fy2013_ap_2.pdf; Walter F. Roche,
Jr., *Waiting list for Section 8 to be temporarily frozen*, Baltimore Sun, February 1, 2003,
*available at*
http://articles.baltimoresun.com/2003-02-01/news/0302010224_1_waiting-list-submit-ap
plications-8-program.

removed from her HCVP household.  At the same time, she asked that Gerald be added to

the voucher because they had reconciled.  Gerald "signed some papers, including a

Judicial Information System Screening Form, a Personal Declaration Form, an

Authorization for the Release of Information/Privacy Act Notice, and a Citizenship

Verification form," allowing the HABC to conduct a criminal background check.

By letter dated April 4, 2012, the HABC notified Darlene that her participation in

the HCVP would be terminated "effective May 5, 2012."  (Emphasis omitted).  The letter

went on to state, in pertinent part:

> The reason for the termination is <u>Tenant Non-Compliance-Violation of Family Obligations/Unauthorized Occupant</u>.
>
> . . .  A background check from the Maryland Judiciary Case Search on Gerald Matthews Sr. lists his address as 3221 Esther Place, Baltimore, MD on three different occasions; January 5, 2004, January 3, 2011, and February 1, 2011.[3]  All of the dates listed are incidents that happened prior to your attempt to add Gerald Matthews Sr. onto your subsidy.  You failed to report to our office that Gerald Matthews Sr. reside [sic] in your household.  Our records indicate that Gerald Matthews Sr. is not an authorized member of your household.

(Emphasis in original).  Thereafter, Darlene exercised her right to request an informal

hearing concerning the termination.

A hearing was held on May 16, 2012.  In attendance were: Hearing Officer Tishea

Irving; HABC counsel Jon Offley; HCVP representative Patricia Boyd; Darlene; Karen

---

[3] Attached to the notice were printouts from the Maryland Judiciary Case Search website regarding three court matters in which Gerald was a party.  In one of those cases, Gerald listed a second address at 1925 E. Fairmont Ave., Baltimore, Maryland.

Wabecke, counsel for Darlene; Gerald; and Mr. Coucci, a representative for the landlord who testified as a witness for Darlene. Boyd confirmed that Darlene came to the HCVP office on December 6, 2011, to request that Gerald be added to her household. Boyd also presented Maryland Judiciary Case Search printouts to show that Gerald had used Darlene's address on three occasions. Offley did not present any testimony or documents on behalf of the HABC.

In response, Wabecke argued that Darlene's participation in the HCVP should not be terminated because she had been a model tenant for eight years. Wabecke noted that the HABC offered no evidence to show that Gerald "resided with [Darlene] without authorization" for seven years.

Darlene testified that Gerald "did not live with her at Esther Place until she requested that he be added to her voucher." Darlene explained that, while she and her husband were separated from 2002 until 2011, Gerald "used her subsidized address to receive mail from child support and VA[4] because he didn't have a stable address." Gerald corroborated Darlene's testimony and added that he lived with his son, Gerald Matthews Jr., at 306 East 24th Street "for several periods of time, over the last 10 years" and with his other son, Shaun Matthews, for approximately three years between 2003-

---

[4] We assume that Darlene was referring to the U.S. Department of Veterans Affairs.

-4-

2011.[5] Gerald explained that he used Darlene's address for child support because "his daughter's mother did not know where he lived, [but] . . . knew where [Darlene] resided." In addition, Gerald stated that he used Darlene's address because "he knew she would receive his mail."

After hearing all of the testimony,[6] the Hearing Officer found that the "HABC has shown by a preponderance of the evidence that Darlene . . . is not eligible for the HCVP because [she] failed to report change in family composition . . . ." By letter dated May 31, 2012, the Hearing Officer elaborated on her findings as follows:

> [T]he HCVP presented three separate documents where [Gerald] used 3221 Esther Place, Baltimore, MD as his primary residence prior to [Darlene's] attempt to add him. [Gerald] testified that he used [Darlene's] address off and on for several years. The Visitor's Policy in Chapter Six of The Administration Plan states that "use of the unit address as the visitor's current residence for any purpose that is not explicitly temporary shall be construed as permanent residence." The documents presented by the HCVP substantiated that [Gerald] used the address listed above for permanent mailing purposes; therefore, [Gerald] will be considered to be living in the unit as an unauthorized household member. I further note that during the hearing, [Gerald] testified that he used [Darlene's] address for mailing purposes because he knew he would receive his mail there and [Darlene] testified that she allowed her husband to use her address for mailing purposes because he didn't have a stable address. Both of these testimonies conflict with Exhibit 12, [Gerald's] award letter issued by the Social

---

[5] A "Declaration" by Shaun Matthews was presented at the hearing. In that declaration, Shaun stated that he lived at 5505 Jonquil Avenue, Baltimore, MD, and that Gerald lived with him "off and on for three years, from 2008-2011."

[6] In her brief, Darlene alleges that Coucci, her landlord, also testified, but that the Hearing Officer did not summarize his testimony in her notes.

Security Administration listing 5002 Anthony Avenue, Baltimore, MD.[7]

This is a violation of part 15 of the Administrative Plan. The composition of the assisted family residing in the unit must be approved by the HABC. . . . Therefore, it is the decision of this hearing officer to **uphold** the HABC's decision to terminate. This means Darlene [] is no longer a participant in the HCVP.

(Emphasis in original).

## Discussion

At the outset, we address the HABC's contention that CJP § 12-302(a) divests this Court of jurisdiction to hear Darlene's appeal. That section states:

Unless a right to appeal is expressly granted by law, § 12-301 of this subtitle does not permit an appeal from a final judgment of a court entered or made in the exercise of appellate jurisdiction in reviewing the decision of the District Court, an administrative agency, or a local legislative body.

CJP § 12-302(a). According to the HABC, Darlene "attempt[s] to appeal a final judgment of the circuit court made in the exercise of its statutory appellate jurisdiction under Maryland Rule 7-401 *et seq.*" and, thus, this case is not properly before this Court. In advancing its argument, the HABC creates a distinction between common law mandamus actions – which the HABC concedes are reviewable by this Court – and administrative mandamus actions – which the HABC contends is the type of action found here. The HABC avers that, "because no further appeal right is granted to [Darlene] . . . , her appeal must be dismissed."

---

[7] In Gerald's written "Declaration," which was presented at the hearing, Gerald stated that he stayed with his daughter, Shauntae Jones, "at her home at 5002 Anthony Ave., Baltimore MD 21026 for a few months" around 2008-2011.

In response, Darlene argues that mandamus actions are an exercise of original jurisdiction by the circuit courts and, therefore, are not subject to the limitations of CJP § 12-302(a).  Darlene also notes that administrative mandamus remains a common law action that has not been codified in a statute and, accordingly, is reviewable by this Court. We agree with Darlene.

We have previously stated that "review of [a hearing officer]'s decision is possible through both administrative mandamus under Md. Rule 7-401(a) and the common law writ of mandamus." *Madison Park N. Apartments, L.P. v. Comm'r of Hous. & Cmty. Dev.*, 211 Md. App. 676, 694, *cert. granted*, 434 Md. 311 (2013).[8]  This is distinguishable from circuit court statutory review cases, which are not reviewable by appellate courts. *See id.* ("Where 'the substance of the circuit court action was a common law mandamus action' and not a statutory action for judicial review, the decision is 'appealable to the Court of Special Appeals under § 12-301 of the Courts and Judicial Proceedings Article.'") (Citations omitted).  *See also Rogers v. Eastport Yachting Ctr., LLC*, 408 Md. 722, 734 (2009) (affirming dismissal for lack of appellate jurisdiction where the circuit court proceeding was "a statutory judicial review action" and Petitioner did not seek "'mandamus' relief" from the circuit court); *Murrell v. Mayor & City Council of*

---

[8] The issues presented to the Court of Appeals on certiorari do not include the appealability of mandamus actions.  In fact, when *Madison Park* was argued before this Court, the Executive Director of the HABC, in his capacity as Commissioner of the Baltimore City Department of Housing and Community Development, conceded that we had jurisdiction to review the circuit court's decision in that administrative mandamus action.

*Baltimore*, 376 Md. 170, 185-86 (2003) (stating that this Court has no jurisdiction over "a statutory judicial review action" but can entertain "a common law mandamus action"); *Prince George's Cnty. v. Beretta U.S.A. Corp.*, 358 Md. 166, 183 (2000) (concluding that CJP § 12-302(a) precluded an appeal where the case involved "a typical statutory judicial review action" and not a mandamus proceeding); *Bucktail, LLC v. Cnty. Council of Talbot Cnty.*, 352 Md. 530, 542 (1999) (allowing appeal of circuit court's judicial review of county council's decision to deny a zoning amendment ordinance as it substantially sought a common law writ of mandamus); *Gisriel v. Ocean City Bd. of Sup'rs of Elections*, 345 Md. 477, 500 (1997) (holding that this Court had jurisdiction to entertain an appeal under CJP § 12-301 where the action was, in substance, a common law mandamus action); and *Perry v. Dep't of Health & Mental Hygiene*, 201 Md. App. 633 (2011) (reviewing administrative mandamus case filed pursuant to Md. Rule 7-401). The cases cited by the HABC, *Dvorak v. Anne Arundel Cnty. Ethics Comm'n*, 400 Md. 446, 456 (2007), and *Healthcare Strategies, Inc. v. Howard Cnty. Human Rights Comm'n*, 117 Md. App. 349 (1997), both involved statutory judicial review and are, therefore, distinguishable.

Alternatively, the HABC attempts to support its argument by creating a distinction between "common law mandamus," which it admits is appealable to this Court, and "administrative mandamus," which it contends is the type found in this case and which we have no jurisdiction to review. As Darlene points out, however, this attempt by

−8−

HABC lacks any legal support. The two types of common law mandamus actions – administrative and traditional – arise when there is no statutorily-granted right to judicial review. Arnold Rochvarg, *Principles and Practice of Maryland Administrative Law* § 13.15 (2011). Administrative mandamus, which is set forth in Md. Rule 7-401, *et seq.*, "is the proper mandamus action when the agency decision being challenged is . . . from a contested case." *Id.* (internal footnote omitted). By contrast, a traditional mandamus action "is used to review an agency action that is not the product of a contested case." *Id.* Both types, however, have specific rules of procedure which govern in circuit court, and both are subject to review by this Court. *See id.* at § 13.15-13.17. Because we see no merit in the HABC's argument, we conclude that this Court has jurisdiction to entertain this appeal, and we shall proceed to review the HABC's decision.

When reviewing the decision of an administrative agency, "this Court reviews the agency's decision, not the circuit court's decision." *Long Green Valley Ass'n v. Prigel Family Creamery*, 206 Md. App. 264, 273 (2012) (citation omitted). In so doing, "we are limited to determining if there is substantial evidence in the record as a whole to support the agency's finding and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *Balt. Police Dep't v. Ellsworth*, 211 Md. App. 198, 207 (citation omitted), *cert. granted*, 432 Md. 466 (2013). Stated differently, "[o]ur primary goal is to determine whether the agency's decision is in accordance with the law or whether it is arbitrary, illegal, and capricious." *Long Green Valley,* 206 Md.

App. at 274 (citation omitted).  "In applying the substantial evidence test, we must decide whether a reasoning mind reasonably could have reached the factual conclusion the agency reached."  *Rideout v. Dep't of Pub. Safety & Corr. Servs.*, 149 Md. App. 649, 656 (2003) (citation omitted).  "When deciding issues of law, however, our review is expansive, and we may substitute our judgment for that of the agency if there are erroneous conclusions of law."  *Maryland Dep't of the Env't v. Ives*, 136 Md. App. 581, 585 (2001) (citation omitted).  As to error of law, this Court's review is *de novo*.  *Taylor v. Harford Cnty. Dep't of Soc. Servs.*, 384 Md. 213, 223 (2004) (applying *de novo* review to determine whether an Administrative Law Judge "applied the correct legal standard in reaching his conclusion").

In this case, the Hearing Officer found that the "HABC has shown by a preponderance of the evidence that Darlene . . . is not eligible for the HCVP because [she] failed to report change in family composition . . . ."  Specifically, the Hearing Officer concluded that Gerald "used [Darlene's] address . . . for permanent mailing purposes; [and] therefore . . . will be considered to be living in the unit as an unauthorized household member."

Chapter 15 of the HABC's Administrative Plan ("Plan")[9] sets forth the grounds for

---

[9] Federal regulations governing the HCVP require that the public housing agency ("PHA") "adopt a written administrative plan that establishes local policies for administration of the program in accordance with HUD requirements."  24 C.F.R. § 982.54(a).

which a HCVP participant's assistance may be terminated. One enumerated basis for termination, and the one relied on by HABC in the instant case, is violation of family obligations. 24 C.F.R. § 982.552(c)(1)(I). Here, the HABC alleges that Darlene violated the family obligation which requires participants to obtain approval of changes in household composition from their State public housing agency ("PHA"). 24 C.F.R. § 982.551(h)(2). Nowhere in the HABC's Plan, however, does it state that termination from the HCVP is warranted when a non-household member (*i.e.*, someone not physically living or residing in the house) uses the subsidized unit's address as his or her mailing address.

The case of *Driver v. Hous. Auth. of Racine County*, 713 N.W.2d 670 (Wis. Ct. App. 2006), is instructive. There, Andrea Driver and Dorothy Bizzle, both participants in the Housing Authority of Racine County's ("HARC") HCVP, brought action against HARC, pursuant to 42 U.S.C. § 1983 (2005), after HARC terminated their Section 8 housing assistance benefits due to violations of "family obligations." *Id.* at 673-75. Specifically, HARC alleged that Driver and Bizzle violated family obligations because non-household members had been "using the[ir] address." *Id.* In Driver's case, the HARC relied solely on a police report listing the address of her friend, Shauna Stilo, as that of the subsidized unit. *Id.* at 674. In Bizzle's case, the HARC relied on a Department of Corrections document and police reports for two of her sons listing her address as theirs. *Id.* at 674-75. Additionally, Bizzle testified that her children "use her

-11-

address when they go to jail." *Id.* at 675. The HARC hearing officer issued decisions in both cases upholding the terminations stating that the participants "violated [their] tenant responsibility." *Id.* at 674-75.

On review, the Court of Appeals of Wisconsin reversed the circuit court's dismissal of the participants' 42 U.S.C. § 1983 (2005) action against HARC, stating:

> [I]t is obvious from the record that HARC considered "using the address" to mean something other than "living at the address." HARC's counsel referred to Bizzle's admission at the informal hearing that when her children go to jail, they use her address. Near as we can tell, this violation involves someone other than the tenant listing the tenant's address as either a mailing address or a place of residence. Of what HARC policy or regulation this conduct constitutes a violation remains a mystery. HARC does not refer to any [Department of Housing and Urban Development ("HUD")] regulation. Moreover, although throughout these proceedings HARC has referred to several documents in the record—which Bizzle signed and which enumerate various rules she must follow—as sources of "family obligations," none of these documents indicates the existence of a "using the address" violation.

*Id.* at 680. Likewise, here, we perceive no violation of any HABC policy or HUD regulation which, when applied to the facts of the case, would warrant termination for violating family obligations.

Presumably unable to find any other provision for support, the Hearing Officer turned to the HABC's Visitor Policy to justify her decision. The Visitor Policy is the methodology by which a visitor is to be considered to be living in the unit as an unauthorized household member. Assuming its applicability, the Hearing Officer improperly applied the HABC Visitor Policy in reaching her conclusion that Gerald was

-12-

an unauthorized household member.

The Visitor Policy states:

**Visitors**

Any adult who has been in the unit more than 14 consecutive days without HABC approval, or a total of 90 days in a 12-month period, will be considered to be living in the unit as an unauthorized household member. Determination of the unauthorized status will include any of the following:

- Absence of evidence of any other address will be considered verification that the visitor is a member of the household.

- Statements from neighbors and/or the landlord will be considered in making the determination.

- Use of the unit address as the visitor's current residence for any purpose that is not explicitly temporary shall be construed as permanent residence.

To rely on this policy, the Hearing Officer must do so in whole, not in part.[10]  Her error

---

[10] In *Downes v. Downes*, 388 Md. 561, 571-72 (2005), the Court of Appeals reiterated:

We have stated the controlling principles of statutory construction so often that only the briefest exposition is necessary.  Our predominant mission is to ascertain and implement the legislative intent, which is to be derived, if possible, from the language of the statute (or Rule) itself.  If the language is clear and unambiguous, our search for legislative intent ends and we apply the language as written and in a commonsense manner. *We do not add words or ignore those that are there.*  If there is any ambiguity, we may then seek to fathom the legislative intent  by looking at legislative history and applying the most relevant of the various canons that courts have created.  *See generally State v. Glass*, 386 Md. 401, 409-10, 872 A.2d 729, 734 (2005); *Piper Rudnick v. Hartz*, 386 Md. 201, 218, 872 A.2d 58, 68 (2005); *Montgomery Cty. Board of Ed. v. Mann Insurance*, 383 Md. 527, 544, 860 A.2d 909, 919 (2004).

(continued...)

was in failing to make a factual finding that Gerald was "in the unit" and, from there, determine if he was an unauthorized household member using the three determining factors.

At no time before or during the hearing did the HABC or HCVP establish that Gerald had "been in the unit more than 14 consecutive days without HABC approval, or a total of 90 days in a 12-month period." For this same reason, the HABC's argument on appeal fails. Specifically, all of the HABC's contentions rest on the assumption that Gerald physically stayed in Darlene's home from 2004-2011, when in fact, the only evidence presented was that he used the address for mailing purposes. A finding of the second does not infer or prove the first. Therefore, the Hearing Officer's conclusion that because Gerald used the address for permanent mailing purposes, he would be considered to be living in the unit as an unauthorized household member was premised upon an erroneous conclusion of law.

For the foregoing reasons, we reverse HABC's decision to terminate Darlene's participation in the HCVP.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. COSTS TO BE PAID BY APPELLEE.**

---

[10](...continued)
(Emphasis added). "Unambiguous language will be given its usual, ordinary meaning unless doing so creates an absurd result." *Hurst v. State*, 400 Md. 397, 417 (2007) (citing *MVA v. Shepard*, 399 Md. 241, 254 (2007)).