*Brij Bhargava v. Prince George's County Planning Board*, No. 0659, September Term, 2023. Opinion by Kehoe, S., J.

**Background:** The Prince George's County Planning Department of the Maryland National Capital Park and Planning Commission approved of an application for a variance from the County's tree conservation ordinance to permit the Prince George's County Public Schools to remove eleven specimen trees to allow for the construction of new school. Citizen Appellants filed an appeal to the Prince George's County Planning Board of the Maryland-National Capital Park and Planning Commission, which affirmed the variance. Appellants filed a petition for writ of administrative mandamus to the Circuit Court for Prince George's County, which dismissed the petition because the issue was moot and because the Appellants had failed to show any right in the continued existence of the specimen trees.

**Holdings:**
The Appellate Court has jurisdiction to consider an appeal of dismissal of a petition for writ of administrative mandamus because it was an appeal of the exercise of original jurisdiction by a circuit court.

Variances from forest conservation ordinances, which are authorized by Md. Code Ann., Nat. Res. ("NR") § 5-1611 et seq. (2023 Repl.), are qualitatively different from zoning variances, which are authorized by Md. Code Ann., Land Use § 4-305.

The Appellants lacked standing to bring the appeal because they could not demonstrate a cognizable right in the trees that were subject to removal.

The matter was moot because the trees had been removed and the Appellants took no action to prevent their removal.

**WOODS & FORESTS** Variances under a forest conservation ordinance are distinct from variances under a zoning ordinance. Unlike variances from a zoning ordinance, which must account for the effect on surrounding properties, variances from forest conservation ordinances address the regulation of the State's natural resources pursuant to Md. Code Ann., NR § 5-1611.

**APPPEAL AND ERROR** A trial court's consideration of an administrative mandamus action is an exercise of original jurisdiction by the trial court over which an appeal may be taken to the Appellate Court. Md. Code Ann., Cts. & Jud. Proc. § 12-301.

**STANDING** Appellants lacked standing to pursue an appeal because variances under the Prince George's County tree ordinance require an examination of the property itself. This requirement is different from zoning variances, which consider the relationship of the subject property to surrounding properties.

**MOOTNESS** A matter is moot when there is no existing controversy from which the court can fashion a solution. *Department of Human Services v. Roth*, 398 Md. 137 (2007). In this case, the trees had been removed, and the Appellants had not taken any steps to block removal.

Circuit Court for Prince George's County
Case No. CAL21-13945

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 659

September Term, 2023

_____

BRIJ BHARGAVA

v.

PRINCE GEORGE'S COUNTY PLANNING
BOARD

_____

Nazarian,
Kehoe, S.,
Zarnoch, Robert A.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Kehoe, J.

_____

Filed: April 1, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

Despite the Appellants' efforts to frame this appeal as a zoning case, it is manifestly not a zoning case. This matter is an appeal from a decision of the Circuit Court for Prince George's County dismissing a petition for administrative mandamus, regarding a decision by the Prince George's County Planning Board of the Maryland-National Capital Park and Planning Commission (the "Board"), affirming the grant of a tree variance for the construction of a K-8 public school on property owned by the Prince George's County Public Schools ("PGCPS"),[1] filed by the Appellants, Nancy Bhargava, Brij Bhargava, Valencia Campbell, Brad Majors, and Derrick Southerland ("Appellants"). The circuit court dismissed the case because it found that the request for administrative mandamus was moot and that the Appellants lacked standing.

The case arises out of an application by the PGCPS for a variance from the County's Tree Conservation Ordinance (Prince George's County Code ("County Code"), Article 25) to remove eleven specimen trees[2] from a property to allow for the construction of a K-8 school. The Prince George's County Planning Department of the Maryland-National Capital Park and Planning Commission (the "Department") approved the application for

---

[1] In the record, PGCPS is referred to as the Board of Education of Prince George's County and Prince George's County Public Schools.

[2] Specimen trees are defined as:

> Trees having a diameter at breast height of 30 inches or more; trees having 75% or more of the diameter at breast height of the current champion of that species; or a particularly impressive or unusual example of a species due to its size, shape, age or any other trait that epitomizes the character of the species. This definition includes all the United States, the State of Maryland and County, or municipality champion trees. *See also* County Code, Sec. 25-118(b)(65).

the variance for the removal of ten specimen trees on May 17, 2021. The Department approved a supplemental application to remove an additional specimen tree on August 18, 2021. The Appellants noted an appeal to the Board, which affirmed the approval by voice vote on October 14, 2021. The Appellants filed a petition for administrative mandamus in the Circuit Court for Prince George's County, which the circuit court dismissed as moot. The circuit court also determined that the Appellants did not "show possession of a specific and clear legal, substantial right or any right at all to the continued existence of the specimen trees." For reasons set forth below, we affirm the decision of the circuit court.

The following issues have been condensed and presented for appeal:[3]

I. Whether the Appellate Court has jurisdiction to consider an appeal of petition for administrative mandamus.

II. Whether the Circuit Court's dismissal of the Appeal was legally correct.

## I. Factual Background

In the 1960s, the PGCPS acquired an unimproved 29.78-acre parcel of land in the Fort Washington area of Prince George's County. The property remained vacant and

---

[3] The issues presented by the Appellants are:

1. Whether the Prince George's County Planning Board met the minimum requirements for articulating the facts found, the law applied, and the relationship between the two when it failed to issue a written decision.

2. Whether the Prince George's County Planning Board erred legally when it determined that Section 25-119(d)(1)(A) did not require a finding of uniqueness and unwarranted hardship as those terms have been defined under Maryland's variance jurisprudence.

2

3. Whether the record lacked substantial evidence to support the Prince George's County Planning Board's decision to affirm TCP2-007-2021, TCP2-007-2021-01, and the associated variances.

4. Whether the Circuit Court for Prince George's County erred legally when it dismissed Citizen-Appellants' Petition for Judicial Review.

The issues presented by the PGCPS are:

1. Whether this Court has jurisdiction over Appellants' action under Md. Code Ann., Cts. & Jud. Proc. §§ 12-301 and 12-302(a).

2. Whether the Circuit Court erred when it dismissed Appellants' action for mootness based on Appellants' failure to request a remedy of any kind that could address their concerns and the fact that the trees have already been removed.

3. Whether the Circuit Court erred when it dismissed Appellants' action for lack of standing based on Appellants' failure to show a specific and clear legal, substantial right or any right at all to the continued existence of the specimen trees on PGCPS' property.

PGCPS raised the following issues if this Court determines that the appeal should not have been dismissed:

1. Whether the approvals of the tree conservation plans and associated tree variances were appropriately documented.

2. Whether the Planning Board erred legally when it determined that PGCPS would suffer an unwarranted hardship under Section 25-119(d)(1)(A).

3. Whether the record lacked substantial evidence to support the approvals of the tree conservation plans and associated tree variances.

The Board raised the following issues on appeal:

1. Did the Circuit Court err when it dismissed the Appellant's petition for Writ of Administrative Mandamus?

2. Should this Court reverse the Planning Board's decision affirming the Planning Director's approval of the Applicant's TCP2 and associated variances because there was no written decision?

3

became entirely wooded. Within the property there were nineteen specimen trees. A specimen tree has a trunk that is thirty inches or greater in diameter at breast height. County Code, Sec. 25.118(b)(65). PGCPS proposed to remove eleven of the nineteen specimen trees to build a seventy-one foot high, four-story, 234,000 square foot school which would accommodate 2,000 K-8 students. PGCPS's proposal also allowed for the construction of ball fields, parking areas, and other amenities. The landscape plan called for the removal of 22.03 acres of forested land and the removal of eleven of the nineteen specimen trees. The buildings and other improvements were located outside of two regulated non-tidal wetlands areas and their associated buffers. PGCPS compensated for the removal of the 22.03 acres of trees by purchasing credits for the planting of 44.10 acres of off-site preservation.[4]

On March 18, 2021, PGCPS originally submitted an application for a variance to permit the removal of ten of the nineteen specimen trees, TCP2-007-2021. PGCPS submitted a later application to include an eleventh specimen tree, TCP-007-2021-01.

---

3. Was there substantial evidence in the record to support the Planning Board's decision to affirm the Planning Director's approval of the TCP2-2021-007 and TCP2-2021-007-01 and the associated variances?

[4] Section 5-1606 of the Natural Resources Article of the Maryland Code (2023 Repl.) establishes that a forest conservation threshold between one quarter to two acres be planted for every acre of trees removed. In this case, two acres were planted for every acre removed. Md. Code Ann., Nat. Res. ("NR") § 5-1610.1 authorizes mitigation banks for the replanting of trees and further authorizes local governments to create mitigation banks. Section 25-121(d)(2)(B) of the County Code provides for a ratio of two acres to be planted for each acre removed.

The overall site plan was subject to mandatory referral to the Board pursuant to Md. Code Ann., Land Use § 20-301.[5] The requests for variances for the removal of the specimen trees were not part of the mandatory referral. The Planning Director is charged with evaluating and approving or denying variances for removal of the specimen trees. County Code, Sec. 25-119(F)(3). Variances from the tree conservation ordinance are not considered zoning variances. County Code, Sec. 25-119(F)(4).

On May 14, 2021, the Planning Director approved the requested variance in TCP2-007-2021 to remove the ten specimen trees. On August 19, 2021, the Planning Director approved the amended request for a variance in TCP2-007-2021-01 for the removal of the additional specimen tree.

---

[5] Section 20-301 of the Land Use Article (2012 Repl.) provides:

Subject to §§ 20-303 and 20-304 of this subtitle, a public board, public body, or public official may not conduct any of the following activities in the regional district unless the proposed location, character, grade, and extent of the activity is referred to and approved by the Commission:

    (1) acquiring or selling land;
    (2) locating, constructing, or authorizing:
        (i) a road;
        (ii) a park;
        (iii) any other public way or ground;
        (iv) a public building or structure, including a federal building or structure; or
        (v) a publicly owned or privately owned public utility; or
    (3) changing the use of or widening, narrowing, extending, relocating, vacating, or abandoning any facility listed in item (2) of this section.

5

The Appellants appealed the determination of the Planning Director to the Board raising these issues:[6]

> there is no written decision that articulates the decision and the basis of the decision to approve TCP2-007-2021 and the variance to Section 25-122(b)(1)(G) in accordance with the requirements of Maryland law; the Maryland-National Capital Park and Planning Commission failed to provide proper public notice of the decision to approve the TCP2-007-2021 and the variance to Section 25-122(b)(1)(G); the applicant failed to prove compliance with Section 25-119 including Section 25-119(d)(l); and the Planning Director lacked the authority to approve the variance in accordance with Section 25-119(d) because the tree conservation plan was associated with the application for MR-2036F which was heard by the Planning Board.

The Board held a hearing on October 14, 2021. At that hearing, Ruth Grover, who holds a master's degree in urban planning, discussed the application for tree variances. She stated that, under Prince George's County Landscape Manual, the site plan requires 147,000 square feet of canopy, but has only 109,857 square feet of canopy. Ms. Grover analyzed the criteria for a variance from the tree conservation ordinance and opined that the application did not comply with title 25 of the County Code. She acknowledged that the requirements set forth in the manual were considered suggestions, not mandates. She stated that the subject property was not unique because other properties in the area have wetland systems. She posited that any hardship was self-created because PGCPS could

---

[6] The Appellants noted an appeal from the approval of TCP2-007-2021 on July 15, 2021 and filed a supplemental appeal from the approval of TCP-007-2021-01 on September 16, 2021. The supplemental appeal incorporated the issues raised in the July 15, 2021 filing.

build a smaller school.[7]  Some portion of Ms. Grover's statement discussed the site plan and whether the site plan complied with the County Code.

Hazel Robinson, the president of the Tantallon Square Homeowners Association and president of the Alliance of Greater County Transparency discussed the application. She stated that she bought her home because of the zip code and the forested area on the subject property. She asserted that the property was not unique because other properties had wetlands and similar environmental features.  She asserted that the PGCPS could build a school at a different location.[8]

Carter Ferrington, the president of the Tantallon Citizens Association, argued that the school could be built in another location and that the forest was very important for the people living in the community.

Nancy Bhargava, who lives directly across from the subject property, talked about the irreparable harm that she and other residents would incur if the trees were removed.

Brij Bhargava acknowledged that the trees had already been removed and questioned whether the removal of the trees would cause an increase in flooding in the area.

Herbert Jones, president of the North Tantallon Area Civic Association and a founding member of the Alliance for Better County Transparency, adopted the comments of the other speakers.

---

[7] Ms. Grover did not explain how a smaller school would be either appropriate or feasible.

[8] Ms. Robinson did not offer any alternate location for the proposed public school.

7

Zanetta Walthour adopted the remarks of the other speakers. She was concerned about flooding that might occur with the removal of the trees. She stated that the removal of the trees would have a negative impact on her property.

Laureena Shah stated her opposition to the proposed variances and questioned whether PGCPS had exhausted all of its options before determining to use the subject site.

Tolores Holmes echoed and endorsed the comments of the previous speakers.

Jamal Reid opposed the removal of the trees.

Angela Malone stated that removal of the trees would be an insult to the community. She expressed a concern about the removal of trees and the effects of climate change. She questioned the wisdom of removing trees to build a green school and suggested that the more environmentally responsible approach would be to redevelop nearby underutilized sites.

Saundra Hall endorsed what the previous speakers had said.

Megan Reiser, Supervisor for the County's Environmental Planning Section, explained the application. She noted that the site plan required mandatory referrals to the Department of Natural Resources. She pointed out that the specific issue before the Board was the variance for the removal of the specimen trees. She explained that the mandatory referral process is a matter of State law and not tied to the County Code. She argued that, under the mandatory approval process, the Planning Director is the appropriate approval authority and that it is not necessary for there to be written findings. Nevertheless, the Planning Director did make written findings with respect to the variances regarding the removal of the specimen trees.

8

Jason Washington spoke on behalf of PGCPS. He said that ninety percent of the property had been cleared and that construction was ongoing.

The Board discussed the appeal in open session and voted to deny it. The Appellants filed a Petition for Judicial Review of the Board's Decision. The Board moved for the circuit court to dismiss the Petition for Judicial Review because there is no statutory right of appeal of a determination under Prince George's County's Forest Conservation Ordinance. The Appellants opposed this motion and posited that the matter could be treated as a petition for writ of administrative mandamus under Rule 7-401 et seq. The circuit court denied this motion to dismiss.

The circuit court acknowledged that the petition was presented as a Request for Administrative Mandamus and, after giving due consideration of the Appellants' arguments, dismissed the matter as moot. The circuit court found that the Appellants had set forth no remedy, had not moved for a stay, and that the specimen trees, to whose removal they objected, had already been removed. The circuit court also found that the Appellants had not shown "possession of a specific and clear legal, substantial right or any right at all to the continued existence of the specimen trees." Accordingly, the circuit court determined that there was no relief to be afforded to the Appellants.

The Appellants noted a timely appeal to this Court.

## II. Discussion

### A. Jurisdiction to Consider the Appeal

As a threshold question, PGCPS argues that this Court does not have appellate jurisdiction over the circuit court's dismissal of the petition for writ of administrative

9

mandamus. PGCPS bases this argument on Md. Code Ann., Cts. & Jud. Proc. § 12-302(a), which requires a legislative grant to confer jurisdiction on the Appellate Court when the circuit court, in its appellate capacity, has considered a petition for writ of administrative mandamus. PGCPS urges dismissal of this action because this Court does not have jurisdiction to entertain the appeal. *Smith v. Taylor*, 285 Md. 143, 147 (1979).

Appellants counter that this Court has jurisdiction over this appeal because a petition for writ of mandamus is a common law action from which there is a right of appeal. Appellants argue that they sought both administrative mandamus and common law mandamus to direct that the Board issue a written decision.

Section 12-301 of the Courts and Judicial Proceedings Article provides:

Except as provided in § 12-302 of this subtitle, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law. In a criminal case, the defendant may appeal even though imposition or execution of sentence has been suspended. In a civil case, a plaintiff who has accepted a remittitur may cross-appeal from the final judgment.

Section 12-302(a) of the Courts and Judicial Proceedings Article provides:

(a) Unless a right to appeal is expressly granted by law, § 12-301 of this subtitle does not permit an appeal from a final judgment of a court entered or made in the exercise of appellate jurisdiction in reviewing the decision of the District Court, an administrative agency, or a local legislative body.

Our Supreme Court has directed this Court to look at the substantive relief sought in a mandamus action to determine if we have jurisdiction to consider an administrative appeal. *Mayor and City Council of Baltimore v. ProVen Management*, 472 Md. 642, 674

10

(2021). A common law writ of mandamus is an original action in the circuit court. *Id*. The starting point to determine whether the Appellate Court has jurisdiction is whether there are statutory provisions providing for appellate review. *Id*. at 665. No further appeal will lie when the circuit court proceeding is in substance judicial review of an adjudicatory decision by an administrative agency or local legislative body, pursuant to a statute, ordinance, or charter provision, and the circuit court renders a final judgment within its jurisdiction. *Id.* at 674. Prior to the enactment of Md. Code Ann., § 12-302(a), Maryland appellate courts regularly exercised appellate jurisdiction over mandamus actions against administrative agencies and officials. *Id*.

"[W]henever a circuit court directly reviews the action, or inaction, of any administrative agency, governmental body, or official in the executive or legislative branches of government, including local government, the court is exercising original jurisdiction and not appellate jurisdiction." *Gisriel v. Ocean City Bd. of Sup'rs of Elections*, 345 Md. 477, 491 (1997). Circuit courts exercise appellate jurisdiction in reviewing an action by a judicial authority or the exercise of a judicial power. *Id*. The review of an administrative decision is an exercise of original jurisdiction by the circuit court. *Id*.

In *Gisriel v. Ocean City Bd. of Supervisors of Elections*, 345 Md. 477 (1997), Vincent Gisriel circulated a petition to bring a comprehensive zoning ordinance to referendum. *Id.* at 480. The petition for referendum required the signatures of twenty percent of the qualified voters. 345 Md. at 481. Mr. Gisriel was able to secure the signatures of 19.81% of the qualified voters. *Id.* Mr. Gisriel filed a petition for writ of

11

mandamus to require the city to purge its voter rolls of unqualified voters, thereby giving his petition the signatures of the requisite twenty percent of the registered voters to be placed on the ballot. *Id.* at 483. The circuit court granted the writ of mandamus, but the Appellate Court reversed that decision. *Id.* at 484. The Supreme Court took certiorari and required the parties to answer the question as to whether the Appellate Court had jurisdiction to consider its appeal. *Id.* The Supreme Court found that Mr. Gisriel's petition to have the Ocean City Board of Supervisors of Election purge its voter rolls was a common law mandamus action over which the appellate courts had jurisdiction. *Id.* at 500-01.

In *Murrell v. City Council of Baltimore*, 376 Md. 170 (2003), our Supreme Court considered whether a statutory appeal could be considered an action in mandamus. 376 Md. at 186. Cephus Murrell received notices from the City that buildings he owned were condemned and could be razed. *Id.* at 176. Mr. Murrell sought administrative review of this notice. *Id.* at 179. The Baltimore City Department of Housing approved the condemnation notice. *Id.* at 181. Mr. Murrell filed an action to review the Department's decision in the Circuit Court for Baltimore City. *Id.* The circuit court affirmed the decision, and Murrell noted an appeal to the Appellate Court. *Id.* at 181-82. Our Supreme Court determined that, although judicial review was sought pursuant to statutory permission, the action was in the nature of a mandamus action because the petitioner sought to have the administrative body issue findings of fact. *Id.* at 199. Accordingly, the appellate courts had jurisdiction to consider the appeal because it was an action in common law mandamus over which the circuit court had original jurisdiction. *Id.*

12

In *Prince George's County v. Baretta U.S.A. Corp.*, 358 Md. 166 (2000), our Supreme Court found that other possible claims that the petitioner might have could not confer appellate jurisdiction. 358 Md. at 181. The Supreme Court held that there is no exception to the non-appealability doctrine set forth in Md. Code Ann., Cts. & Jud. Proc. § 12-302(a) for issues that could have been litigated. *Id.* at 182. In that case, Baretta U.S.A. Corp. ("Baretta") filed a statutory appeal for review of an administrative decision. *Id.* at 170. At oral argument before the Appellate Court, Baretta challenged the validity of a provision of the County Code that allowed for the award of damages for humiliation and embarrassment in discrimination cases. *Id.* at 171. The Appellate Court held that the provision of the County Code allowing for damages was invalid. *Id.* at 172. The Supreme Court, however, held that, notwithstanding the possibility of other claims, the matter was in the nature of an administrative appeal and that the Appellate Court did not have jurisdiction to consider an appeal from the circuit court judgment. *Id.* at 182.

Appellants cite *Matthews v. Housing Authority of Baltimore City*, 216 Md. App. 572, *cert. denied* 439 Md. 330 (2014), in which this Court held that both common law and administrative mandamus are governed by rules in the circuit court and are subject to review by this Court. 216 Md. App. at 582. Darlene Matthews participated in a Housing Choice Voucher Program to rent a home in Baltimore City. *Id.* at 574. Her participation in that program was terminated when the Housing Authority of Baltimore City determined that her home had an unauthorized occupant. *Id.* Ms. Matthews' estranged husband, Gerald, began to live in her home. *Id.* at 575. She requested that he be permitted to live in the home. *Id.* The Housing Authority determined to terminate her voucher because there

13

was evidence that Mr. Matthews had been living in the home on several occasions prior to Ms. Matthews' request to have him added as a resident. *Id.* at 577-78. Ms. Matthews appealed the decision, and the Hearing Officer found that the Housing Authority had shown by a preponderance of the evidence that Ms. Matthews was not eligible to participate in the voucher program. *Id.* at 578. Ms. Matthews filed a petition for administrative mandamus of the Hearing Officer's decision in the Circuit Court for Baltimore City. *Id.* at 575. The circuit court affirmed the Hearing Officer's decision. *Id.* Ms. Matthews noted an appeal to the Appellate Court, which considered whether Md. Code Ann., Cts. & Jud. Proc. § 12-302(a) divested it of jurisdiction to consider the administrative mandamus action. *Id.* at 579.

In *Matthews*, the Housing Authority contended that there is a distinction between a petition for writ for common law mandamus and a petition for writ of administrative mandamus. *Id.* at 581. We noted that both actions arise when there is no statutorily granted right of appeal to the circuit court. *Id.* Administrative mandamus applies when there is a contested case, and common law mandamus applies when there is no contested case. *Id.* Both actions are guided by specific procedures and are subject to review by this Court. *Id.*

The Appellants first noted their appeal to the Circuit Court for Prince George's County as an administrative appeal under Rule 7-201 et seq. Appellees moved for dismissal because there is no statutory right of appeal under the Prince George's County Tree Conservation Ordinance, and the petition was amended to be a review under Rule 7-401 et seq. The Appellants claim that their action, although not specifically pled as an

action for common law mandamus, was also in the nature of common law mandamus because, as a matter of relief, they sought to have the Board issue written findings.

We conclude that there is no statutory basis for appeal under the Prince George's County Forest Conservation Ordinance, and that this action was an exercise of original jurisdiction by the Circuit Court for Prince George's County. Accordingly, this Court has jurisdiction to review the decision of the circuit court under Md. Code Ann., Cts. & Jud. Proc. § 12-301.

### B. The Circuit Court's Decision

#### 1. Standard of Review

"[T]he standard of review of the grant or denial of a motion to dismiss is whether the trial court was legally correct." *Howard v. Crumlin*, 239 Md. App. 515, 521 (2018), *cert. denied*, 463 Md. 153 (2019) (citing *Blackstone v. Sharma*, 461 Md. 87, 110 (2018)). When reviewing a circuit court's grant or denial of a motion to dismiss, "we must assume the truth of the well-pleaded factual allegations of the complaint, including the reasonable inferences that may be drawn from those allegations." *Adamson v. Correctional Medical Services, Inc.*, 359 Md. 238, 246 (2000) (citations omitted). "[D]ismissal is proper only if the alleged facts and permissible inferences, so viewed, would, if proven, nonetheless fail to afford relief to the plaintiff." *Id.* (Citations omitted.) In sum, because we must deem the facts to be true, our task is confined to determining whether the trial court was legally correct in its decision to dismiss. *Monarc Const., Inc. v. Aris Corp.*, 188 Md. App. 377, 384 (2009).

15

Determination of whether the circuit court erred in granting the Appellees' motion to dismiss is a question of law, which we review de novo. *Chesapeake Bay Foundation, Inc. v. CREG Westport I, LLC*, 481 Md. 325, 336 (2021). We owe no deference to the decision of the lower court. *Talbot County v. Miles Point Property, LLC*, 415 Md. 372, 384 (2010). An appellate court "must determine whether the lower court's conclusions are legally correct[.]" *Id.* (quoting *Nesbit v. Gov't Employees Ins. Co.*, 382 Md. 65, 72 (2004)). "So long as the Circuit Court applies the proper legal standards and reaches a reasonable conclusion based on the facts before it, an appellate court should not reverse a decision vested in the trial court's discretion merely because the appellate court reaches a different conclusion." *Aventis Pasteur, Inc. v. Skevofalix*, 396 Md. 405, 436 (2007).

### 2. Mootness

The matter before the Board arose out of the Appellants' letters, through counsel, of June 15 and September 16, 2021. The June 15 letter stated:

> I am filing on my clients' behalf an appeal to the Planning Board of the approval of the Type 2 Tree Conservation Plan, TCP2-007-2021 which included the approval of a variance from Section 25-122(b)(1)(G) to allow the removal of ten specimen trees. My clients are also appealing the approval of a variance from Section 25-122(b)(1)(G). I have attached a copy of the TCP2-007-2021 plan.

The September 16 letter stated:

> This letter constitutes a supplement to the appeal I filed on June 15, 2021 (appeal dated June 15, 2021 is attached as Exhibit A). I am supplementing the appeal to include the approval of an additional specimen tree on August 19, 2021. I received a copy of the approval on September 14, 2021 (Approval attached as Exhibit B).

> My clients respectfully request a hearing before the Planning Board.

16

The Board held its hearing on October 14, 2021.

The Appellants' Petition for Judicial Review before the circuit court stated that they were seeking judicial review, "pertaining to the decision of the Prince George's County Planning Board on October 14, 2021 to affirm the approval of the Type 2 Tree Conservation Plans (TCP2-OO7-2021 and TCP2-007-01) and the associated variances from Section 25-122(b)(1)(G) to allow for the removal of eleven specimen trees at the proposed Southern K-8 Middle School site." The circuit court found that the Appellants had:

> set forth no request for a remedy of any kind, which could address their concerns, and the trees have already been removed, leaving any such effective remedy no longer available. As a result, this Court is unable to provide any relief because there is no relief to be given.

The circuit court also noted that the Appellants, despite claiming that they possessed a clear legal right to the continued existence of the specimen trees, did not avail themselves of any available relief for a stay pursuant to Rule 7-205. Citing *Department of Human Services v. Roth*, 398 Md. 137, 143 (2007), and *Suter v. Stuckey*, 402 Md. 211, 219 (2007), the circuit court noted that the appeal was moot because there was no relief that could be offered to the Appellants.

"A case is moot when there is no longer any existing controversy between the parties at the time that the case is before the court, or when the court can no longer fashion an effective remedy." *Roth*, 398 Md. at 143 (quoting *In re Kaela C.*, 394 Md. 432, 452 (2006)). "[T]he doctrine of mootness applies to a situation in which past facts and occurrences have produced a situation in which, without any future action, any judgment

17

or decree the court might enter would be without effect." *Hayman v. St. Martin's Evangelical Lutheran Church*, 227 Md. 338, 343 (1962).

In this case, the subject specimen trees have been removed, and within the framework of the petition before the circuit court there was no relief that could be granted. A court may consider the merits of a moot matter if the matter presents an unresolved issue of "important public concern that, if decided, will establish a rule for future conduct." *Hammen v. Baltimore County Police Dept.*, 373 Md. 440, 450-51 (2003); *see also Department of Human Resources v. Roth*, 398 Md. 137, 143-44 (2007). The Appellants claimed, without offering any authority, that they had a substantial right in the stand of trees on the subject property. They offered no substantive evidence as to why removal of the specimen trees would create an adverse effect on them. Nor did they undertake any meaningful effort to prevent the removal of the trees. Accordingly, the circuit court correctly determined that there was no relief to be accorded. Nevertheless, the appeal does raise a question as to who has standing to appeal a variance under a forest conservation ordinance. For that reason, we will consider the substance of the appeal as it relates to the issue of standing.

### 3. Standing

In *Chesapeake Bay Foundation, Inc. v. CREG Westport I, LLC*, Justice Brynja M. Booth undertook a thorough analysis of the statutory history of the forest conservation ordinances and the relationship of those ordinances to the regulatory scheme governing land use. 481 Md. at 328-30. The Forest Conservation Act of 1991 (the "Act") served to

protect forests by identifying and protecting sensitive areas as part of the site planning process. *Id.* at 329. The Act is administered by the Maryland Department of Natural Resources ("DNR") and establishes standards for local jurisdictions to use, *inter alia*, in mapping priority areas, development review, and approval of forest stand delineations.[9] *Id.* Justice Booth noted:

> On a property with significant forest cover, a forest conservation plan, as well as any variance or waivers that are granted by the approving agency from the strict application of the provisions of the Forest Conservation Act or local forest conservation program, may dictate the scope, location, and placement of the building footprint and structures on the property.

*Id.* at 330. Md. Code Ann., Nat. Res. § 5-1611 authorizes local governments to adopt variance procedures from their tree conservation ordinances:

> (a) In the preparation of the State or local forest conservation programs, the State and local authorities shall provide for the granting of variances to the requirements of this subtitle, where owing to special features of a site or other circumstances, implementation of this subtitle would result in unwarranted hardship to an applicant.
>
> **Variance procedures**
>
> (b) Variance procedures adopted under this section shall:
>
>> (1) Be designed in a manner consistent with the spirit and intent of this subtitle; and
>>
>> (2) Assure that the granting of a variance will not adversely affect water quality.

---

[9] "'Forest stand delineation' means the methodology for evaluating the existing vegetation on a site proposed for development, taking into account the environmental elements that shape or influence the structure or makeup of a plant community." Md. Code Ann. Nat. Res. § 5-1601(p).

19

Variances from the Trees and Vegetation Ordinance are subject to the requirements of Section 25-119(d) of the County Code:

(1) An applicant may request a variance from this Division as part of the review of a TCP [Tree Conservation Plan] where owing to special features of the site or other circumstances, implementation of this subtitle would result in unwarranted hardship to an applicant. To approve a variance, the approving authority shall find that:

(A) Special conditions peculiar to the property have caused the unwarranted hardship;

(B) Enforcement of these rules will deprive the applicant of rights commonly enjoyed by others in similar areas;

(C) Granting the variance will not confer on the applicant a special privilege that would be denied to other applicants;

(D) The request is not based on conditions or circumstances which are the result of actions by the applicant;

(E) The request does not arise from a condition relating to land or building use, either permitted or nonconforming, on a neighboring property; and

(F) Granting of the variance will not adversely affect water quality.

(2) Notice of a request for a variance shall be given to the State of Maryland Department of Natural Resources within 15 days of receipt of a request for a variance.

(3) Variances shall be approved by the Planning Board, Zoning Hearing Examiner, and/or the District Council for all tree conservation plans that are associated with applications heard by them. The Planning Director may approve variances for tree conservation plans that are not associated with applications heard by the Planning Board, Zoning Hearing Examiner and/or the District Council. The Planning Director's decisions are appealable to the Planning Board.

(4) *Variances granted under this Subtitle are not considered zoning variances.*

(Emphasis added.)

Consideration of a forest conservation plan (and by extension a variance from the forest conservation requirements) is a separate regulatory process from zoning considerations. *CREG Westport*, 481 Md. at 350-51; *see also* Md. Code Ann., Nat. Res. § 5-1608(b).

20

Notwithstanding the statutory separation between variances from the Tree and Vegetation Ordinance and the considerations regarding variances from a zoning ordinance, Appellants cite a number of zoning decisions to argue that the PGCPS did not meet the legal standards for a variance.

Appellants cite *Montgomery County v. Rotwein*, 169 Md. App. 716 (2006), for the proposition that the combination of wetlands and woodlands on the subject property cause the "zoning provision to impact disproportionately" on it. 169 Md. App. at 727-28. An applicant must demonstrate that the application of the zoning ordinance to the unique characteristics of the land would cause "peculiar or unusual practical difficulties" that justify the variance requested. *Id.* at 727. The Appellants' reliance on *Rotwein* is misplaced. The Trees and Vegetation Ordinance does not look at the disproportionate impact of the variance. Instead, the Trees and Vegetation Ordinance makes DNR an interested party by requiring that notice of the application be served on DNR. The people of Maryland, through DNR, therefore, are the potential aggrieved party because of DNR's statutory role in overseeing forest conservation plans. *CREG Westport*, 481 Md. at 329. It is also noteworthy, that under Md. Code Ann., Land Use § 20-303, the Commission need only communicate reasons for its decision if it denies an application.

Appellants also rely on *Dan's Mountain Wind Force, LLC v. Allegany County Board of Zoning Appeals*, 236 Md. App. 483 (2018), to contend that there was no showing of a practical difficulty that would have deprived the Board of Education of reasonable and significant use of the entire parcel. 236 Md. App. at 492. In *Dan's Mountain*, we focused on uniqueness as an aspect of the test for considering a zoning variance. *Id.* at 494-95.

21

Uniqueness is a necessary element of the variance test, allowing a zoning board "to determine whether the zoning law's effect on [the] property is particularized to that given property." *Id.* at 494. We observed in *Dan's Mountain* that:

> *First*, if the allegedly restrictive effect of the zoning law is not unusual, and a characteristic is shared by many properties, the problem ought to be addressed by legislation . . . .

> *Second*, and similarly, the uniqueness analysis guarantees that a granted variance cannot act as a precedent in an application regarding another property. If the effects of the zoning law operate similarly to the way in which they operate on a separate applicant property, the uniqueness requirement is likely not satisfied. *Finally*, in an analogous situation, the [Supreme Court] has noted that uniformity of the application of zoning laws—accomplished in part by requiring that properties exempt from those laws be unique—performs a "critically essential function," by "protect[ing] the landowner from favoritism towards certain landowners within a zone by the grant of less onerous restrictions than are applied to others within the same zone."

*Id.* at 494-95. *Carney v. City of Baltimore*, 201 Md. 130 (1952), stands for the proposition that applications for a variance are not merely for the owner's convenience. 201 Md. at 137.

"The cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature." *Lockshin v. Semsker*, 412 Md. 257, 274 (2010). "If the language of the statute is unambiguous . . . , our inquiry" ends with "the statute as written, without resort to other rules of construction." *Id.* at 275. The language "must be viewed within the context of the statutory scheme to which it belongs[.]" *Id.* at 276. Further, "[w]e presume that the Legislature intend[ed] its enactments" to act as a "harmonious body of law." *Id.*

22

Appellants' reliance on these cases is mistaken because the present case manifestly does not involve zoning. Section 25-119(d)(4) of the County Code specifically provides that variances in this context are not zoning variances. A comparison of the criteria for a variance from the Trees and Vegetation Ordinance, found in Subtitle 25 of the County Code, and a variance from the Prince George's County Zoning Ordinance, found in Subtitle 27 of the County Code, is instructive. Section 27-230(a) of the County Code, which sets for the criteria for granting zoning variances, provides:

> A variance may only be granted when the District Council, Zoning Hearing Examiner, Board of Appeals, or the Planning Board as applicable, finds that:
>
> (1) *A specific parcel of land is physically unique and unusual in a manner different from the nature of surrounding properties* with respect to exceptional narrowness, shallowness, shape, exceptional topographic conditions, or other extraordinary conditions peculiar to the specific parcel (such as historical significance or environmentally sensitive features);
> (2) The *particular uniqueness and peculiarity* of the specific property causes a zoning provision to impact disproportionately upon that property, such that strict application of the provision will result in peculiar and unusual practical difficulties to the owner of the property;
> (3) Such variance is the minimum reasonably necessary to overcome the exceptional physical conditions;
> (4) Such variance can be granted without substantial impairment to the intent, purpose and integrity of the general plan or any area master plan, sector plan, or transit district development plan affecting the subject property; and
> (5) *Such variance will not substantially impair the use and enjoyment of adjacent properties*.
> (6) Notwithstanding any other provision of this Section, a variance may not be granted if the practical difficulty is self-inflicted by the owner of the property.

(Emphasis added).

The requirements for a zoning variance require that the subject parcel be "physically unique and unusual in a manner different from the nature of surrounding properties with

23

respect to exceptional narrowness, shallowness, shape, exceptional topographic conditions, or other extraordinary conditions peculiar to the specific parcel." County Code, § 27-230(a). Uniqueness is essential to the granting of a zoning variance because it is a test as to whether the application of the zoning law is particularized to the subject property. *Dan's Mountain*, 236 Md. App. at 494.

This language is distinct from the requirements of Section 25-119. For a variance from the Trees and Vegetation Ordinance, the applicant must show, "to special features of the site or other circumstances, implementation of this subtitle would result in unwarranted hardship to an applicant." County Code, § 119(d). The focus is on the special features of the site, and not its uniqueness. In other words, the focus is on how the special features of the site affect the proposed use of the land.

The grant of a zoning variance requires consideration of whether the granting of the variance will impair use and enjoyment of adjacent properties. County Code, § 27-230)(a)(5). There is no corresponding provision for a variance under the Trees and Vegetation Ordinance. Again, there the focus is on the effect on the subject parcel. The legislature was specific in pointing out that a variance under Subtitle 25 of the County Code was not a zoning variance. The legislature also did not use the word "unique" in Section 25-119(d) of the County Code. These word choices by the legislature confirm that variances under Section 25-119(d) are substantively different from variances under Section 27-230. Accordingly, the Appellants' reliance on zoning decisions to suggest that the Board did not give proper consideration to the uniqueness of the subject property or the effect of the tree variance on surrounding properties is without merit.

The notice provisions for variances under the Trees and Vegetation Ordinance provide that an application is to be served on DNR. There is no corresponding obligation under the Zoning Ordinance. This requirement speaks to who the interested parties are in a variance under the Trees and Vegetation Ordinance: the property owner and DNR. Adjacent property owners are not mentioned as potentially interested parties. As the trial court correctly noted, the Appellants did not point out any cognizable right that they had to the trees on someone else's property. The interest is that of the people of Maryland through the offices of DNR.

The circuit court correctly determined that the Appellants had no cognizable right in the trees on the subject property. The County Code is clear that variances under Subtitle 25 are to look at the use of the property itself, and that variances under Subtitle 27 require the property to be unique and further to consider the effect on surrounding properties. This distinction plainly demonstrates that the Appellants had no legally cognizable interest in the tree variance.

### C. Conclusion

This Court can exercise jurisdiction here because the action before the circuit court was a matter of original jurisdiction in the manner of seeking mandamus relief, which included an order to direct the Board to issue written findings. The circuit court correctly dismissed the Petition for Administrative Mandamus because the Appellants could not provide any cognizable interest in the subject trees, nor did they undertake any effort to block their removal. Accordingly, we affirm the decision of the Circuit Court for Prince George's County dismissing the Appellants' Petition for Administrative Mandamus.

25

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY IS AFFIRMED. APPELLANTS TO PAY COSTS.**